**COMPANIA ESPANOLA de PETROLEOS, S. A.,**
Plaintiff-Appellant-Cross-Appellee,

v.

**NEREUS SHIPPING, S. A.,**
Defendant-Appellee-Cross-Appellant.

**HIDROCARBUROS y DERIVADOS, C. A., Plaintiff-Appellee,**

v.

**NEREUS SHIPPING, S. A.,**
Defendant-Appellant,

and

Compania Espanola de Petroleos, S. A.,
Defendant-Appellee.

**In the Matter of the Arbitration between HIDROCARBUROS y DERIVADOS, C. A., Petitioner-Appellee,**

v.

**NEREUS SHIPPING, S. A.,**
Respondent-Appellant.

Nos. 241–244, Dockets 75–7069, 75–7206, 75–7207 and 75–7208.

United States Court of Appeals,
Second Circuit.

Argued Nov. 5, 1975.

Decided Dec. 12, 1975.

Patrick V. Martin, New York City (Theodore P. Daly, John C. Mamoulakis, and Poles, Tublin, Patestides & Stratakis, New York City, on the brief), for Compania Espanola de Petroleos, S. A.

Thomas A. Dillon, Jr., New York City (Raymond J. Burke, Raymond J. Burke, Jr., and Burke & Parsons, New York City, on the brief), for Nereus Shipping, S. A.

Lawrence W. Newman, New York City (Janna H. J. Bellwin, Baker & McKenzie, and Donovan, Donovan, Maloof & Walsh, New York City, on the brief), for Hidrocarburos y Derivados, C. A.

Before MEDINA, ANDERSON and MANSFIELD, Circuit Judges.

MEDINA, Circuit Judge:

Any system of court procedure worthy of the name requires the observance of

certain fundamentals. The parties must prepare papers, sometimes called pleadings, in which they set forth the issues or disputes between them, preferably doing so in such fashion as to make it easy to separate the issues of fact from the issues of law; at the trial or hearing some written record must be made of the proceedings, either in the form of a stenographic transcript by a court reporter or by what have been sometimes euphemistically called the judge's "minutes"; if, by common consent or otherwise the issues are changed during the trial or hearing, the change must be evidenced by new or amended papers or pleadings, or by a written order by the judge or a statement made by him and in some way made a part of the written record; and, when the issues are decided by the judge, there must be some writing, generally called a judgment, in which it clearly appears that the judge has made a final disposition of the whole case or that something else remains to be done. That the observance of these fundamentals is in the interest of justice, that it tends to avoid or at least reduce confusion, the great enemy of justice, and that it greatly facilitates the functioning of an appellate court of review is too obvious for comment. We are sorry to say that in the matter now before us neither the judge nor any of the parties seem to have been aware of some of these fundamentals, except after the event.

So we are presented with what are called four appeals, one cross-appeal, one motion to dismiss one appeal on written papers, and a miscellany of suggestions scattered throughout the briefs to the effect that, in another appeal, neither the District Court below nor our Court had any jurisdiction to make any adjudication relative to the rights and obligations of the parties. It turns out, as will appear more fully below in this opinion, that there is no merit whatever in any of these claims that we or the court below lacked jurisdiction. We have managed to penetrate the outer shell of this mass of confusion and procedural efflu-

via and we find buried underneath it all two relatively simple questions of law. As will more fully appear shortly in this opinion, there was a contract of affreightment, a charter party, with an arbitration clause and an Addendum No. 2 to that contract separately executed by a guarantor. The two questions are:

(1) Did the guarantor agree to arbitrate;

and

(2) Was it proper for the District Judge to consolidate the arbitration between the shipowner and the guarantor with the arbitration between the shipowner and the charterer and make the necessary adjustment concerning the selection of the arbitrators?

We decide that Judge Stewart properly construed the charter party and Addendum No. 2 so as to require the guarantor to arbitrate. And we also decide that Judge Stewart had the power under the Federal Arbitration Act and Fed.R. Civ.P., Rule 42(a), to consolidate the two arbitrations and that in doing so he did not abuse his discretion, because the two arbitrations had common questions of law and fact, and because the extensive and complicated issues were so intertwined and overlapping that it could have caused great and irreparable injustice had Judge Stewart ruled that the two arbitrations must proceed separately.

## I

### The Background of Undisputed Fact

A chronological survey of the course of events will serve as a background against which to focus the law points which we are called upon to decide.

On January 27, 1971, "at New York, N.Y." a charter party or maritime contract of affreightment was signed by Nereus Shipping, S.A., a Liberian corporation, an agent for owners of various vessels, as "owner" and Hidrocarburos y Derivados, S.A., a Venezuelan corporation engaged in the oil business as "charterer." These parties are referred to in

the record and will be referred to in this opinion as Nereus and Hideca. This three-year maritime contract called for the transportation of 600,000 long tons of petroleum products from the Persian Gulf to various ports in Europe and the Mediterranean. It contained elaborate provisions as to the selection of the vessels, demurrage and so forth. What concerns us here especially is the arbitration clause 24, which is as follows:

24. ARBITRATION. Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York or in the City of London whichever place is specified in Par. 1 of this charter pursuant to the laws relating to arbitration there in force before a board of three persons consisting of one arbitrator to be appointed by the Owner, one by the Charterer, and one by the two so chosen. The decision of any two of the three on any point or points shall be final. Either party hereto may call for such arbitration by service upon any officer of the other, wherever he may be found, of a written notice specifying the name and address of the arbitrator chosen by the first moving party and a brief description of the disputes or differences which such party desires to put to arbitration. If the other party shall not, by notice served upon an officer of the first moving party within twenty days of the service of such first notice, appoint its arbitrator to arbitrate the dispute or differences specified, then the first moving party shall have the right without further notice to appoint a second arbitrator, who shall be a disinterested person with precisely the same force and effect as if said second arbitrator has been appointed by the other party. In the event that the two arbitrators fail to appoint a third arbitrator within twenty days of the appointment of the second arbitrator, either arbitrator may apply to a Judge of any court of maritime jurisdiction in the city abovementioned for the appointment of a third arbitrator, and the appointment of such arbitrator by such Judge on such application shall have precisely the same force and effect as if such arbitrator had been appointed by the two arbitrators. Until such time as the arbitrators finally close the hearings either party shall have the right by written notice served on the arbitrators and on an officer of the other party to specify further disputes or differences under this Charter for hearing and determination. Awards made in pursuance to this clause may include costs, including a reasonable allowance for attorney's fees, and judgement [sic] may be entered upon any award made hereunder in any Court having jurisdiction in the premises.

At "Madrid, 24th June, 1971," Compania Espanola de Petroleos, S.A., a large integrated Spanish oil company referred to in the record and in this opinion as Cepsa, signed "Addendum No. 2" to the agreement of January 27, 1971. This document was also signed by Nereus and Hideca. It reads as follows:

In connection with the contract of affreightment, embodied in the Charter Party drawn up at New York and dated 27th January, 1971, between Nereus Shipping S.A. as Agents for Owners (hereinafter called the Owner), and Hidrocarburos y Derivados, C.A. (HIDECA) (hereinafter called the Charterer), being that the Charterer shall use the tonnage contracted under the present Charter Party for the transportation, during the period of three years commencing November 1971/January 1972, of crude oil under a CIF contract to be signed with Compania Espanola de Petroleos, S.A. (CEPSA) we, Compania Espanola de Petroleos, S.A., hereby agree that, should HIDECA default in payment or performance of its obligations under the Charter Party, we will perform the balance of the contract and assume the rights and obligations of HIDECA on the same terms and conditions as contained in the Charter

Party. Provided, however, that Compania Espanola de Petroleos, S.A. shall not be responsible for any payments or damages as a result of HIDECA's default, prior to receiving written notice from the Owner advising us that HIDECA is in default, and calling upon us to assume performance of the Charter Party.

It is obvious to us that these two separate documents must be read together.

All went well until the Arab oil embargo in October, 1973, when the market rate for oil cargoes fell precipitously. The ensuing complications were many and various. We do not think it is necessary in this opinion to set them forth in detail or in summary. They are all relevant to the question of whether or not there was a default by Hideca. There are also numerous and difficult questions of interpretation of the meaning of the two documents, all of which will be questions for the arbitrators to decide in the ensuing consolidated arbitration, as the arbitration clause 24, quoted above, refers to "Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration * * *." In this connection it is worthy of note that the arbitration is not limited to disputes recited in the original demands for arbitration. Clause 24 also provides:

Until such time as the arbitrators finally close the hearings either party shall have the right by written notice served on the arbitrators and on an officer of the other party to specify further disputes or differences under this Charter for hearing and determination.

The amounts of money involved are large, at least four millions of dollars and perhaps more. The intimations, tossed in here and there by Nereus, to the effect that perhaps Hideca is not completely responsible financially, but that Cepsa is, do no more than add to the general confusion.

## II

*The Arbitration Notices and the Development of the Strategy of Nereus to Arbitrate First with Cepsa and Later with Hideca*

On July 24, 1974, Nereus notified Cepsa that it claimed Hideca was in default and called upon Cepsa "to perform the balance of the Charter Party." On August 14, 1974, Nereus demanded arbitration with Hideca and on August 23, 1974, Hideca served its demand for arbitration on Nereus. That these two would have to arbitrate their differences was perfectly plain. But what position vis-à-vis arbitration would be taken by Cepsa was not known. However, on September 3, 1974, Nereus demanded that Cepsa arbitrate and on September 16, 1974, Cepsa rejected this demand and claimed it had not agreed to arbitrate. It was at this time that Nereus began to implement its strategy to have the Cepsa arbitration proceed first and the Hideca arbitration come later. If successful this strategy would be very advantageous to Nereus and very prejudicial to Hideca and Cepsa as the critical question or congeries of questions to be decided by the arbitrators relative to the alleged default by Hideca would be first decided in an arbitration to which Hideca was not a party, despite the fact that Hideca had access to the evidence relative to the alleged default and Cepsa did not. Moreover, much could be accomplished while Cepsa's obligation to arbitrate was still not adjudicated. The combination of delay by Nereus with reference to the Hideca arbitration, on the one hand, and proceeding with all possible speed with reference to the Cepsa arbitration, on the other hand, is very plain.

Although the two arbitrators representing Hideca and Nereus were promptly appointed, they just could not agree on who should be the third arbitrator. This went on for months. It is inconceivable to us that this was just because these two arbitrators wanted to be polite to one another. In any event, while this

delay continued, and at a time when Nereus knew that Cepsa claimed it was not obligated to arbitrate, Nereus appointed its original arbitrator, and, as Cepsa naturally made no appointment because of its position in the matter, within 20 days as provided in the agreement, the first Nereus arbitrator appointed a second arbitrator and the two appointed a third. So, before a court had any opportunity to decide whether Cepsa was required to arbitrate, the entire arbitration panel had been selected and was ready to proceed.

Under the pressure of these events Cepsa started what we shall call Action No. 1 seeking a declaratory judgment to the effect that it had not agreed to arbitrate and an injunction permanently restraining Nereus from going ahead with the arbitration.

## III

### Action No. 1 and the Decision by Judge Stewart on December 18, 1974

When Cepsa's lawyers walked into Judge Stewart's chambers to argue the motion, they thought that the worst that could happen was the denial of their application for a preliminary injunction. It was undoubtedly their expectation that, if this motion was denied, there would be a full dress trial in due time at which all the issues of this declaratory judgment action would be fully explored. Instead, after hearing oral arguments and studying the briefs, Judge Stewart found that he disagreed with Cepsa's interpretation of the documents and he decided the whole case "on the merits" and held that Cepsa had "consented to arbitrate disputes once it has been notified by Nereus of any default by Hideca." As far as we can make out from the record, this was a complete surprise to all parties concerned. The decision filed on December 18, 1974, does not state that the judge is granting summary judgment or that he is deciding that the complaint fails to state a claim for relief. It does not even say that the complaint is dismissed.

We shall discuss below our disposition of the appeal by Cepsa from this order of December 18, 1974, giving our reasons. In this preliminary survey of the course of events it will suffice to say that Nereus says this decision implicitly confirmed Nereus' choice of the three arbitrators in the Nereus-Cepsa arbitration, and is in effect a direction that arbitration proceed forthwith before that panel notwithstanding the inability of the arbitrators in the Hideca-Nereus arbitration to even get the latter proceeding off the ground. This is the explanation for the various procedural maneuvers by Nereus that we will discuss in due course and which have made these appeals so unnecessarily complicated and confused. Suffice it to say that we disagree completely with this interpretation of the December 18, 1974, decision as claimed by Nereus. We think all that Judge Stewart decided, and all he intended to decide, was that Cepsa had agreed to arbitrate. We affirm his conclusion on that issue. In addition, however, in order to free Cepsa from any unnecessary prejudice as a result of its having made a good faith challenge to its duty to arbitrate, we modify the December order by removing the three Nereus arbitrators.

## IV

### Action No. 2 and the Decision of March 21, 1975

In the course of time Hideca woke up to the fact that the failure of the two arbitrators to appoint the third arbitrator had stalled the arbitration. They also woke up to the fact that Nereus might activate the arbitration referred to in Action No. 1 and that this would be prejudicial to the Hideca-Nereus arbitration which, it was claimed by Hideca, should logically be tried first. So, Hideca on January 30, 1975, commenced two civil proceedings: (1) an action against Nereus and Cepsa for an injunction restraining them from proceeding with the arbitration referred to in Action No. 1 until after the conclusion of the Hideca-

Nereus arbitration; and (2) a petition against Nereus pursuant to Section 5 of the Federal Arbitration Act (9 U.S.C. Section 5) for the appointment of the third arbitrator in the Hideca-Nereus arbitration. These two proceedings were heard together by Judge Stewart. Again we have no transcript. But it does appear that someone suggested that the two arbitrations be consolidated. This suggestion was vigorously opposed by counsel for Nereus. As the parties were all before the court, the result was the consolidation order from which one of the appeals before us was taken.

V

*There is No Merit in any of the Procedural Motions Made by Nereus*

This brings us to the barrage of procedural motions and maneuvers by Nereus that have reduced the record before us to a state of utter confusion.

■ The main brief of Nereus refers to a cross-appeal by Nereus bearing the docket number 75–7208. The supposed notice of cross-appeal is not in the Appendix nor is it in the Supplemental Appendix. Diligent search of all the files in these actions in the Clerk's office failed to reveal any such notice of cross-appeal. What actually had happened was that counsel for Nereus had taken a copy of the Nereus notice of appeal in Action No. 2 from the order of March 21, 1975, and slipped it in the file in Action No. 1. He says he was told to do this by someone in the Clerk's office. This paper does not purport on its face to be a cross-appeal from the order of December 18, 1974. Nor could it, in any event, have any validity as a cross-appeal since the time to appeal or cross-appeal from the order of December 18, 1974, had long since expired when the document was placed in the file. The plain fact is that there is no such cross-appeal.

■ On January 17, 1975, Cepsa appealed from the order of December 18, 1974. On January 24, 1975, on voluminous papers having little to do with the matter, Nereus moved in this Court to dismiss the appeal for lack of jurisdiction. The motion was referred to the panel deciding these cases. Despite the voluminous papers and briefs, the questions presented are very simple. As with everything else in these cases, it takes time and effort to dig through a mass of confusion. All Nereus is saying is that the order of December 18, 1974, was interlocutory and not final, and also that it denied an injunction in an admiralty case, that an admiralty court had no power to issue injunctions and that the principle of *Enelow v. New York Life Insurance Co.,* 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935) should be applied. All this is nonsense. The order was final, and is thus appealable. *Paliaga v. Luckenbach S.S. Co.,* 301 F.2d 403 (2d Cir. 1962). *See also* 28 U.S.C. Section 2201; *American Casualty Co. of Reading, Pa. v. Howard,* 173 F.2d 924 (4th Cir. 1949). This is not a suit in admiralty nor is the principle of *Enelow* concerning stays in admiralty even remotely applicable. The reference in the complaint to the maritime law and admiralty is to indicate the basis for the civil jurisdiction of the District Court, there being no diversity. This is a civil action and the papers in the file are given the Case No. 74 Civ. 5102. In the motion papers Nereus makes no reference to this number. We deny the motion to dismiss as frivolous.

■ Scattered throughout the briefs are other miscellaneous claims of lack of jurisdiction. Thus it is said that, pending the determination of the appeal to this Court from the order of December 18, 1974, the District Court had no jurisdiction to make the order of consolidation. There is no substance to this claim. The filing of a notice of appeal from the December 18, 1974, order only divested the District Court of jurisdiction with respect to questions raised and decided in the order appealed from. Whether consolidation should be ordered after it was determined that Cepsa was obliged to arbitrate was an issue neither raised nor determined in the order of December 18, 1974. Thus, the well-rec-

ognized rule that a court is without jurisdiction to modify a decision during the pendency of an appeal is inapplicable here where two independent proceedings were involved. *See* Moore, *Federal Practice* ¶ 203.11 (1975); *cf. Weiss v. Hunna,* 312 F.2d 711, 713 (2d Cir.), *cert. denied,* 374 U.S. 853, 83 S.Ct. 1920, 10 L.Ed.2d 1073 (1963); *United States v. Radice,* 40 F.2d 445, 446 (2d Cir. 1930).

■ It is also claimed by Hideca that the order of consolidation is not appealable. But inasmuch as the order is conclusive on the issue of the obligation of the parties to arbitrate and how they are to arbitrate, and has a final and irreparable effect on the rights of the parties, it is appealable. The order not only mandated the procedural step of consolidation, it also obligated the parties to arbitrate, thereby affecting their substantive rights. We hold this order appealable. It finally adjudicated claims of right separable from, and collateral to, the rights that will be determined by the arbitrators. Those claims of right are too important to be denied review and too independent of the cause itself to preclude the parties from seeking appellate review until the arbitration is concluded.

## VI

### *The Law Points*

At last we get down to the questions of law with respect to Judge Stewart's holding that Cepsa had agreed to arbitrate and with respect to his power to consolidate the two arbitration proceedings and order the selection of five rather than three arbitrators.

### A.

■ We agree with Judge Stewart's interpretation of Addendum No. 2 and we affirm his holding that Cepsa is obliged to arbitrate the disputes between Cepsa and Nereus. But we modify the order of December 18, 1974, so as to provide for the elimination of the three arbitrators originally appointed to the Cepsa-Nereus panel.

In his Memorandum-Opinion of December 18, 1974, Judge Stewart concluded that the Letter of Guaranty signed by Cepsa incorporated the contract's arbitration clause. The guaranty states unequivocally that in the case of Hideca's default, Cepsa is to "assume the rights and obligations of HIDECA on the same terms and conditions as contained in the Charter Party," as well as "perform the balance of the contract." Although the guaranty does not explicitly restate the specific obligations which Hideca had undertaken and which Cepsa was to assume in the event of Hideca's default, the court found such iteration to be unnecessary in view of the broad language of the guaranty.

The determination of whether a guarantor is bound by an arbitration clause contained in the original contract necessarily turns on the language chosen by the parties in the guaranty. We are aided in our construction of the language here by prior decisions which make clear that where an arbitration clause is applicable by its own terms to all disputes and is not limited to those arising between the Owner and Charterer, the agreement to arbitrate binds "not only the original parties, but also all those who subsequently consent to be bound by [the terms of the contract]." *Lowry & Co. v. S.S. Le Moyne D'Iberville,* 253 F.Supp. 396, 398 (S.D.N.Y.1966), *appeal dismissed,* 372 F.2d 123 (2d Cir. 1967). *See also Son Shipping Co. v. De Fosse & Tanghe,* 199 F.2d 687, 688 (2d Cir. 1952). Two cases relied upon by Cepsa, *Production Steel Co. of Illinois v. SS Francois L. D.,* 294 F.Supp. 200 (S.D.N.Y.1968) and *Taiwan Navigation Co. v. Seven Seas Merchants Corp.,* 172 F.Supp. 721 (S.D.N.Y.1959) are distinguishable. The former case involved a narrow arbitration clause which, unlike the clause before us, was expressly applicable only to disputes between "the owners and charterers." The latter involved a guaranty which prescribed merely that the third party would "guarantee performance" by the charterer. Here, under the guaranty, Cepsa agreed both to "perform the

balance of the contract" and to "assume the rights and obligations of HIDECA." Thus, the court's holding in *Taiwan* that "performance" could not include the obligation to arbitrate does not dictate our disposition here where additional obligations were expressly undertaken. We agree with Judge Stewart that the duty to arbitrate was indeed one of the rights and obligations under the contract which Cepsa, as guarantor, agreed to assume. See *Midland Tar Distilleries, Inc. v. M/T LOTOS,* 362 F.Supp. 1311 (S.D.N.Y.1973).

We further agree with the District Court's holding that Cepsa may be compelled to arbitrate before it is conclusively determined that Hideca is in default. That conclusion is a commercially reasonable and logical interpretation of the parties' intent. In any event, consolidation of the arbitrations moots the problem and obviates any possibility that Cepsa might prematurely be held liable to Nereus without first assessing Hideca's liability. It must be borne in mind that all questions relative to the meaning and interpretation to be given to the references in Addendum No. 2 to the "default" and the notice of the default required to be given to Cepsa are for the arbitrators to decide.

We think it is clear that Judge Stewart intended to and did decide the whole case with finality even if he did not explicitly say the complaint was dismissed. But we are troubled by his lack of sensitivity to the procedural aspects of the matter before him. It is quite true that the point of law he was deciding did dispose of the whole case. Assuming he was right, there was no point in putting the parties to the trouble and expense of a full dress trial. It would have been a simple matter to inform the parties that he contemplated the possibility of taking such action and desired to give the parties an opportunity to express their views in opposition if they so desired. After studying the matter with some care, however, we have decided to let his action stand.

Perhaps the most important reason for our doing so is that this record convinces us that he was right. Addendum No. 2 itself is, we think, clear and unambiguous. There is no claim that there were any oral conversations that would serve to explain any ambiguity. The written communications between the parties were mostly after the event and none has been called to our attention that would be admissible under the parol evidence rule. Also, we cannot ignore the fact that, immediately after the filing of the opinion of December 18, 1974, Cepsa made no motion for reargument or for a rehearing. Nor did it submit any offer of proof. Had this been done Judge Stewart would have realized what Cepsa's expectations were with reference to a full dress trial and he might have taken some corrective action.

### B.

As Judge Stewart had all the interested parties before him in an equitable proceeding and as there was ample opportunity afforded to all parties to express their views and present any testimonial or documentary evidence they thought would support these views, we think it was clearly proper for Judge Stewart to take the matter of consolidation of the two arbitration proceedings under consideration and to make the order of consolidation, even over the objection of Nereus. What the claim of prejudice by Nereus amounts to is that Nereus was prevented from pursuing a course that we think was gravely prejudicial to Hideca and Cepsa. That the consolidation was in the interest of justice is overwhelmingly demonstrated. There were not only common questions of law and fact in the two arbitrations but there was danger of conflicting findings, especially on the subject of Hideca's alleged default. Only after a full scale survey of the complicated facts could the arbitrators make an informed judgment on the subject of what sort of default and what sort of notice were intended to trigger the obligations of Cepsa under the guaranty.

Nereus claims that the District Court was without power to consolidate the ar-

bitrations, and that consolidation in any case is improper unless the party who has arbitration agreements with the other two parties consents to that procedure. However, there is more than ample support in the case law for the propriety of a court's consolidation of arbitrations under the federal statute. *See, e. g., Robinson v. Warner,* 370 F.Supp. 828 (D.R.I.1974); *Lavino Shipping Co. v. Santa Cecilia Co.,* 1972 A.M.C. 2454 (S.D. N.Y.1972); *Matter of Arbitration Between Chilean Nitrate & Iodine Sales and Intermarine Corp.,* 1972 A.M.C. 2460 (S.D.N.Y.1971). We agree that Fed.R. Civ.P., Rules 42(a) and 81(a)(3), are applicable. Moreover, we think the liberal purposes of the Federal Arbitration Act[1] clearly require that this act be interpreted so as to permit and even to encourage the consolidation of arbitration proceedings in proper cases, such as the one before us.

█ And, if this flexible and desirable remedy is to encompass consolidation, we hold this must include the essential implementation of the consolidated proceeding by moulding the method of selection and the number of arbitrators so as to fit this new situation. New situations require new remedies. To adhere to the terms of the original arbitration agreement which contemplated the appointment of a single arbitrator by each participant and the selection by them of a third arbitrator is no longer possible, especially in this case where two independent arbitrations would result in unnecessary duplication and, more importantly, possibly in inconsistent results, further delaying final resolution of the issues.

Accordingly, we affirm so much of Judge Stewart's order of March 21, 1975, as directs the consolidation of the two arbitrations but we modify so much of the order as concerns the selection of the arbitrators.

With respect to the arbitrators in the consolidated arbitration Judge Stewart held:

Ordered, that the arbitration panel who shall hear all claims shall consist of five members one of whom shall be chosen by plaintiff Hideca, one chosen by defendant Nereus, one chosen by defendant Cepsa, and those three chosen shall choose the remaining two arbitrators, * * *.

For these directions we substitute the following, by way of modification of the order appealed from:

(1) Each of the three parties shall appoint its arbitrator within twenty (20) days after the filing of our opinion in this case and, if any party shall fail to nominate its arbitrator within this time, this arbitrator shall be appointed by the District Judge. The three arbitrators thus chosen shall jointly appoint two additional arbitrators.

(2) The appointment of the two additional arbitrators must be done by the unanimous action of the three arbitrators already appointed by the parties. And, if such unanimous selection of the two additional arbitrators is not made within ten (10) days after the three original arbitrators have been chosen, then the two new arbitrators shall be selected by the District Judge.

Having considered at length a variety of alternatives for the composition of the panel and for the selection of the panel members, we are convinced that the method we have chosen is the only method that will give each of the parties fair and equitable treatment. Moreover, we do not see how this method of selection of five arbitrators can be prejudicial to Nereus. We believe that it is important that each party have its own representative, a provision which also appears in the contract, and thus we agree with Judge Stewart's selection of a five-man

1. *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402 (2d Cir. 1959), *cert. granted,* 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, *cert. dismissed pursuant to stipulation,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); *World*

*Brillance Corp. v. Bethlehem Steel Co.,* 342 F. 2d 362, 364–65 (2d Cir. 1965); *Necchi v. Necchi Sewing Machine Sales Corp.,* 348 F.2d 693 (2d Cir. 1965), *cert. denied,* 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966).

panel. We feel this will best accommodate the newly ordered consolidation and the original contract provisions.

It is our hope that the parties will now get down to business.