**In the Matter of the Arbitration between**
**TRANSPORTACION MARITIMA MEXICANA, S.A.,**

**and**

**COMPANHIA de NAVEGACAO LLOYD BRASILEIRO.**

**No. 83 Civ. 5060–CSH.**

United States District Court,
S.D. New York.

July 26, 1983.

Burlingham, Underwood & Lord, New York City, for plaintiff.

Crowell, Rouse & Varian, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

The petition of Transportacion Maritima Mexicana, S.A. ("TMM") for an order directing a consolidated arbitration of certain disputes it has with Companhia de Navegacao Lloyd Brasileiro ("LB") is denied.

TMM's basic tenet is that "LB was not entitled to limit the scope of the arbitration provision" when it responded, in its telex of August 24, 1982, to TMM's August 23 demand for arbitration. Burrell Reply Affidavit at ¶ 5, p. 3. Accepting *arguendo* the soundness of that contention, TMM was in a position to regard itself as a party "ag-

grieved by the ... refusal of another to arbitrate under a written agreement for arbitration," within the meaning of the Federal Arbitration Act, 9 U.S.C. § 4. TMM's § 4 petition to the Court would have alleged that LB was wrongfully refusing to submit to the arbitrators disputes which were arbitrable under the clause. Had the Court agreed with that contention, it could have fashioned an order directing arbitration of disputes in conformity with TMM's perception of the disputes then existing, and its construction of the arbitration clause.

However, TMM did not seek that form of judicial intervention. Instead, TMM participated in the selection of the three-man arbitration panel. The hearings commenced under the direction of the panel chairman. At an early stage of the hearings, a dispute broke out between TMM and LB as to the scope of the disputes which the arbitrators would consider. It appears from the motion papers that TMM argued for a broad construction, and LB for a narrow construction, pursuant to which the only disputes to be arbitrated concerned the M/V MAISTROS. The parties submitted arguments on this point to the arbitrators. The arbitrators ruled on the point in the chairman's letter of June 7, 1983. The arbitrators regarded TMM's contention as an effort "to enlarge the scope of the arbitration ..." The panel rejected that application, as it construed it, holding in respect of the scope of the arbitration:

> "The Panel has the power to decide any issues of dispute put before them. The only disputes before this Panel at this time are those concerning the MAISTROS."

█ The arbitrators, presented at the early stages of the arbitration with a disagreement between the parties as to its scope, were obliged to deal with the matter. They have done so. I am aware of no authority, statutory or case law, which empowers the district court to intervene in the arbitration and reverse this arbitrators' ruling. But that, in practical effect, is what TMM asks me to do. It is worth observing that the Federal Arbitration Act bestows limited powers upon the court. The court may get an arbitration under way by granting a § 4 petition; it may name arbitrators or fill vacancies in the panel, § 5; after the arbitration, it may confirm and award and enter judgment upon it, § 9; and it may vacate an award for one of the grounds set forth in § 10. *Quaere* whether, in the case at bar, TMM could argue that, in making the ruling to which I have referred, the arbitrators refused "to hear evidence pertinent and material to the controversy" within the meaning of § 10(c). It is sufficient to state for the present that the Federal Arbitration Act permits judicial intervention before the arbitration begins and after the award has been rendered. There is no statutory authority for judicial intervention during the course of arbitration proceedings, with the sole exception of a § 5 petition if there has been "a lapse ... in filling a vacancy" in the panel of arbitrators.

TMM argues that it is not seeking to reverse the arbitrators' ruling on the scope of arbitration. Rather, TMM cites case law for the proposition that the district court may compel a consolidated arbitration in appropriate circumstances. TMM has sought to lay the foundation for a petition to consolidate by demanding arbitration of those disputes which LB successfully argued to the arbitrators should not be included within the scope of the present, pending arbitration.

TMM accompanied that subsequent demand for arbitration by the appointment, as its arbitrator, of the same arbitrator it designated in the pending arbitration. LB has responded by appointing its arbitrator in the pending arbitration, although it opposes TMM's attempt at consolidation. No third arbitrator has as yet been designated in the subsequent proceeding.

█ This is not an appropriate situation in which to invoke the concept of consolidated arbitration. The district court's ability to compel a consolidated arbitration, against the wishes of one of the participants, is not found in any provision of the Federal Arbitration Act. The concept is

entirely one of case law. That observation is made in the seminal case in the Second Circuit on the subject, *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966, 975 (2d Cir.1975), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976). *Nereus* and the district court decisions both preceding and following it, a number of which TMM cites in its main brief at 5–9, involve a single, discrete dispute between at least three parties, bound together by a chain of contracts. *Nereus* involved a shipowner, a charterer, and a guarantor. *Matter of Czarnikow-Rionda Co.*, 512 F.Supp. 1308 (S.D.N.Y.1981) is one of many cases involving an owner, a charterer and a voyage charterer. In such situations, the courts frequently direct that a consolidated arbitration take place. A primary purpose is to avoid the "danger of conflicting findings," *Nereus*, at 974. A timely application for a consolidated arbitration is made before the arbitration proceedings get under way. This permits the court to consider the proper makeup of the arbitration panel, in order to do justice to the three (or perhaps more) disputing parties, and to ensure that the joint panel, however constituted, considers all the evidence to be adduced in the consolidated proceedings.

In short, the consolidated arbitration is a pragmatic procedural tool of the equity court, fashioned to deal with multi-party and multi-contract cases where to permit several arbitrations would bring about a clear and present danger of conflicting findings and resulting injustice.

The case at bar presents no such circumstances. There are not three parties; there are only two. There is not a multiplicity of contracts; there is only one. TMM's application for "consolidation" does not come at the beginning of the proceedings; for all that appears, the arbitration before the present panel is almost concluded. These distinctions are of conceptual significance. As a practical matter, granting the instant petition would constitute judicial intervention in a pending arbitration, taking the form of a direction to sitting arbitrators that they expand the scope of their responsibility beyond the boundaries they have

themselves declared in a considered ruling. I find no authority for such a judicial intervention in the cases which direct a consolidated arbitration. Certainly those cases cannot be regarded as direct authority for the present proposition. And they do not provide a fair analogy, since the thrust of the Federal Arbitration Act is to severely limit the ability of the Court to intrude upon a pending arbitration or interfere with its result. It is one thing for a court of equity to achieve a pragmatic result in an area where the statute is silent. That is the rationale of *Nereus* and its progeny. It is quite another for the court to insert itself into the administration of a pending arbitration, contrary to the clear spirit of the statute. The fact that statutory remedies were available but not utilized only serves to reenforce this conclusion.

Accordingly the petition to consolidate arbitration is denied. In view of this holding, I need not reach the other issues raised in the briefs. I am aware that LB contests the Court *in personam* jurisdiction to entertain this petition. I intimate no view on that point. Since the next arbitration hearing is scheduled for early August, and the jurisdictional objection, if well taken, could easily be remedied by TMM, I have thought it best to deal with the merits of the petition expeditiously.

Petition denied.

It is So Ordered.