### In the Matter of ARBITRATION BETWEEN COASTAL SHIPPING LIMITED, Petitioner,

### and

### SOUTHERN PETROLEUM TANKERS LTD., Respondent.

### No. 92 CIV 3787 (SS).

United States District Court, S.D. New York.

Feb. 1, 1993.

Hill, Rivkins, Loesberg, O'Brien, Murray & Hayden by Anthony J. Mavronicolas, New York City, for petitioner.

Dougherty, Ryan, Giuffra, Zambito & Barra by Peter J. Zambito, New York City, for respondent Southern Petroleum Tankers and for intervenors Lineas Agromar.

Cichanowicz, Callan & Keane by David J. Van Oss, New York City, for respondent Antilles Transport Line, Inc.

## MEMORANDUM OPINION AND ORDER

SOTOMAYOR, District Judge.

Petitioner Coastal Shipping Limited ("Coastal") seeks an order compelling a

consolidated arbitration of separate claims arising from two distinct bareboat charter agreements with respondent Southern Petroleum Tankers Limited ("Southern Petroleum"). Jurisdiction is premised on this Court's general admiralty jurisdiction, 28 U.S.C.A. § 1333 (West 1992), and § 3 of the Federal Arbitration Act (the "Arbitration Act"), 9 U.S.C.A. §§ 1–14 (West 1991 & Supp.1992).

Southern Petroleum questions whether this Court has the authority under § 4 of the Arbitration Act or Fed.R.Civ.P. 42(a) and 81(a)(3) to compel a consolidated arbitration of two separate agreements containing identical arbitration clauses that are silent about and do not incorporate any rules or laws addressing the issue of consolidation. This question has generated considerable disagreement among district and circuit courts. Despite a Second Circuit case suggesting a contrary conclusion, this Court joins in the reasoning of Judge David N. Edelstein in *Ore & Chemical Corp. v. Stinnes Interoil, Inc. et al.*, 606 F.Supp. 1510 (S.D.N.Y.1985), and concludes that it lacks authority to order consolidation under the circumstances of this case.

## I. *Background*

The general facts of this case are not disputed. Coastal owns two motor tankers, named the "SIBYL W" and the "ERIN T". Southern Petroleum "bareboat chartered" the SIBYL W and the ERIN T on March 27, 1989 and January 26, 1990, respectively. Except for the named tanker, the time-duration of the agreement, and the geographical area for the tanker's use,

the charter agreements are boiler-plate copies containing identical arbitration clauses. The arbitration clauses state that:

Should any dispute arise between the Owners and the Charterer's [sic], the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final and for the purpose of enforcing any award this agreement may be made a rule of the Court. The arbitrators shall be commercial men conversant with shipping matters.

Southern Petroleum subsequently sub-chartered the SIBYL W to Lineas Agromar Limitada, S.A., which in turn sub-chartered the tanker to a company owned by the Mexican government. The ERIN T was sub-chartered to Antilles Petroleum. Coastal has requested that any order compelling consolidated arbitration also include a compulsion that the sub-charter parties participate in the consolidated arbitration. Because of the sub-charters, the disputes between Coastal and Southern Petroleum may involve multiple parties potentially asserting defenses and counterclaims that run up and down two distinct and independent "vertical charter agreements."[1] The sub-charter parties were not named in the Petition and have not been joined in this proceeding, and the Court, therefore, will not address that portion of Coastal's request as it affects those parties.

Coastal claims against Southern Petroleum center around Southern Petroleum's breach of both charter agreements by its

---

1. The two vertical charter agreements run in the following manner:

| SIBYL W (7 March 1989) | ERIN T (20 January 1990) |
|---|---|
| Coastal Shipping Limited | Coastal Shipping Limited |
| Southern Petroleum Tankers | Southern Petroleum Tankers |
| Lineas Agromar Limitada | Antilles Transport Line |
| Mexican Corporation (government owned) | |

failure to pay outstanding hire and crew wages. Despite efforts to cure the breach or to reach a negotiated settlement, Coastal was unable to bring Southern Petroleum into compliance with the charters. On January 27, 1992, the ERIN T was withdrawn from Southern Petroleum's service and on February 18, 1992, the SIBYL was withdrawn. Coastal demanded consolidated arbitration, nominated one arbitrator for both disputes, and demanded that Southern Petroleum do the same. Southern Petroleum rejected consolidation and, presumably because of Coastal's consolidation demand, selected but did not formally nominate an arbitrator for the ERIN T charter dispute. Southern Petroleum has not selected or nominated an arbitrator for the SIBYL dispute.

Coastal contends that the commonality of law and facts between its two claims against Southern Petroleum requires this Court to exercise its discretion to compel the consolidated arbitration of the claims. Southern Petroleum concedes that it chartered the SIBYL W and the ERIN T, that it signed similar boiler-plate agreements containing identical arbitration clauses, and that it is compelled to arbitrate the separate claims raised by Coastal. It argues, however, that an order to consolidate the arbitration of separate claims would constitute an impermissible reformation of the parties' arbitration contracts and that a commonality of law and facts do not exist in this case warranting the Court's exercise of any discretionary power it may have.

In short, both parties agree that arbitration is proper; they clash, however, over the form the arbitration must take.

## II. *Discussion*

A summary of general arbitration principles places Coastal's motion to compel arbitration in the proper context.

■ Pursuant to the Federal Arbitration Act and following the lead of the Supreme Court in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), federal courts have adopted a policy of actively enforcing private arbitration agreements. Although the Arbitration Act is interpreted liberally, *see Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.* 527 F.2d 966, 975 (2d Cir.1974), and doubts are resolved in favor of arbitration, *see, e.g., United States Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *David L. Threlkeld & Co., Inc. v. Metallgesellschaft Limited (London),* 923 F.2d 245, 248 (2d Cir.), *cert. dismissed* — U.S. ——, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991), arbitration is strictly a matter of contract; therefore, a party can be compelled to arbitration only when it has agreed to do so. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Absent an explicit statement, *see Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees Union,* 359 F.2d 598, 603 (2d Cir.1966), or conduct implying an agreement to arbitrate, *see Gvozdenovic v. United Air Lines, Inc.,* 933 F.2d 1100, 1105 (2d Cir.1991), arbitration will not be compelled. Thus, a Court must first satisfy itself that the agreement to arbitrate is not at issue before compelling arbitration. *Tehran–Berkeley Civil and Environmental Engineers v. Tippetts–Abbett–McCarthy–Stratton,* 816 F.2d 864, 867 (2d Cir.1987).

■ Neither Coastal nor Southern Petroleum dispute that valid agreements to arbitrate exist in this case. Southern Petroleum, however, questions this Court's power to order consolidated arbitration absent a specific agreement to that effect. It argues that consolidation of the disputes at issue would amount to a reformation of the contracts—an action not authorized by the Arbitration Act or the Rules of Civil Procedure, and contrary to the intent of the parties. The Court agrees with Southern Petroleum's arguments.

### A. Authority to Compel Consolidated Arbitration

Whether § 4 of the Arbitration Act or Fed.R.Civ.P. 42(a) and 81(a)(3) give federal

courts the power to order consolidated arbitration absent specific language to that effect in the arbitration agreements is the subject of a divisive debate not yet settled by the Supreme Court. A number of courts, following the lead of Judge Medina's seminal opinion in *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.* 527 F.2d 966 (2d Cir.1974), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976), have held that federal courts have the power to order consolidation absent any consent by the parties to do so in the arbitration agreements. *See, e.g., New England Energy, Inc. v. Keystone Shipping Co.*, 855 F.2d 1 (1st Cir.1988) (holds that district courts have discretion to compel consolidated arbitration of vertical charter agreements even though arbitration provisions silent on the issue of consolidation); *Maxum Foundations, Inc. v. Salus Corporation*, 817 F.2d 1086 (4th Cir. 1987) (recognizes that the authority of federal courts to order consolidation when parties have not explicitly agreed to do so is uncertain but holds that contracts between project owner and general contractor and between general contractor and sub-contractor sufficiently revealed intention to arbitrate, so as to justify consolidation); *Huber v. Hunt & Nichols, Inc. v. Architectural Stone Co., Inc.*, 625 F.2d 22 (5th Cir. 1980) (affirms order mandating consolidation of two contract disputes between general contractor and subcontractor); *O & Y Landmark Associates of Virginia v. Nordheimer*, 725 F.Supp. 578, 582 (D.C.C.1989) (finds *Compania Espanola* persuasive and holds that a guarantor is bound by an arbitration agreement entered into between obligor and a general partnership).

*Compania Espanola* has also had its opponents in those courts that have held that consolidation is not authorized by the Arbitration Act or the Federal Rules of Procedure. *See, e.g., American Centennial Insurance Company v. National Casualty Company*, 951 F.2d 107 (6th Cir.1991) (district court lacks power to order consolidated arbitration when agreements are silent on the question of consolidation); *Baesler v. Continental Grain Company*, 900 F.2d 1193 (8th Cir.1990) (district court lacks power to consolidate arbitration proceedings); *Weyerhaeuser Co. v. Western Seas Shipping Co.*, 743 F.2d 635 (9th Cir. 1984) (jurisdiction of federal courts is predicated on private agreement of the parties; therefore, federal courts cannot order consolidation absent agreement to consolidate arbitration).

A close reading of *Compania Espanola* suggests that its facts do not support the expansive application of its holding as some courts have interpreted it. In *Compania Espanola*, Nereus, as agent for the owners of various vessels, chartered the vessels to Hideca, a Venezuelan oil company. The parties agreed that "[a]ny and all differences and disputes of whatsoever nature arising out of [the] Charter shall be put to arbitration in the City of New York or in the City of London whichever place is specified in Par. 1 of this charter pursuant to the laws relating to arbitration there in force. . . ." 527 F.2d at 969. A few months after signing the charter agreement, Cepsa, a Spanish oil company, agreed to serve as guarantor of Hideca's performance. An addendum to this effect was signed by all parties and was appended to the charter agreement. *Id.*

Following the 1973 Arab oil embargo, Nereus notified Cepsa that Hideca was in default and requested that Cepsa perform the obligations remaining under the charter agreement. 527 F.2d at 969. Cepsa failed to comply and Nereus demanded arbitration. Cepsa rejected the demand, asserted that it was not bound to arbitration, and moved for declaratory judgment and a permanent injunction. *Id.* The district court denied Cepsa's request, held that Cepsa had agreed to arbitration, and ordered consolidation of the Nereus–Hideca and Nereus–Cepsa arbitrations. 527 F.2d at 974.

Affirming the district court's order of consolidation, Judge Medina stated:

[T]here is more than ample support in the case law for the propriety of a court's consolidation of arbitrations under the federal statute [citations omitted]. . . . We agree that Fed.R.Civ.P., Rules 42(a) and 81(a)(3) are applicable. Moreover, we think the liberal purposes

of the Federal Arbitration Act clearly require that this act be interpreted so as to permit and even to encourage the consolidation of arbitration proceedings *in proper cases, such as the one before us.*

527 F.2d at 975 (emphasis added). Judge Medina first determined that Cepsa had agreed to arbitration and consolidation by signing an addendum requiring it to " 'perform the balance of the contract' and to 'assume the rights and obligations of Hideca.' " 527 F.2d at 973.[2] He then affirmed the district court's finding that consolidation was proper because of the common questions of law and fact raised by the dispute, and the substantial danger of conflicting findings if arbitration was allowed to proceed. *Id.* at 974.

A majority of the cases in the Southern District have interpreted *Compania Espanola* to hold that consolidation of arbitrations is within a court's discretionary power even when an arbitration agreement is completely silent on the issue. For a summary of the factors used by court to invoke this power *see Elmarina, Inc. v. Comexas, N.V.,* 679 F.Supp. 388, 390 (S.D.N.Y.1988); *see also Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica,* 669 F.Supp. 577, 578 (S.D.N.Y.1987); *Sociedad Anonima de Navegacion Petrolera v. Cia de Petroleos de Chile, S.A.,* 634 F.Supp. 805, 807 (S.D.N.Y.1986); *In re Czarnikow–Rionda Co.,* 512 F.Supp. 1308, 1312 (S.D.N.Y.1981); *Antco Shipping Co. v. Sidermar,* 417 F.Supp. 207, 219 (S.D.N.Y. 1975).

Judge Edelstein, however, in a well reasoned opinion in *Ore & Chemical Corp. v. Stinnes Interoil, Inc.,* 606 F.Supp. 1510 (S.D.N.Y.1985), criticized the expansive holding of *Compania Espanola,* concluding that the Second Circuit would disavow *Compania Espanola* in light of the Supreme Court's decision in *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), and the rationale of the Ninth Circuit in *Weyerhaeuser Co. v. Western Seas Shipping Co.,* 743 F.2d 635, 637 (9th Cir.1984). Judge Edelstein's reading of *Dean Witter* and *Weyerhaeuser* led him to conclude that: "[t]he court can only compel arbitration if the arbitration agreements provided for consolidation." *Ore,* 606 F.Supp. at 1514 (S.D.N.Y.1985)[3]. He then referred the matter to arbitration stating that: ("it is more efficient to let the arbitrators, [those] who will be deciding the merits of the matter, decide how the issues are to be adjudicated"). *Ore,* 606 F.Supp. at 1515.

In *Dean Witter,* the Supreme Court held that federal courts could not refuse to order arbitration of pendent law claims to a federal securities action even if the order resulted in a less efficient prosecution of the claims for the parties. The holding was based on the Supreme Court's analysis of the Arbitration Act's legislative intent:

> We therefore are not persuaded by the argument that the conflict between the two goals of the Arbitration Act—enforcement of private agreements and encouragement of efficient and speedy dispute resolution—must be resolved in favor of the latter in order to realize the intent of the drafters. *The preeminent concern of Congress in passing the act was to enforce private agreements to arbitrate, even if the result is "piecemeal" litigation, at least absent a countervailing policy manifested in another federal statute.*

470 U.S. at 221, 105 S.Ct. at 1242–43 (emphasis added).

In *Weyerhaeuser Company v. Western Shipping Co.,* 743 F.2d 635 (9th Cir.), *reh., and reh. en bank denied* (1984), *cert. de-*

---

**2.** *Cf. Weyerhaeuser Company v. Western Seas Shipping Co.,* 743 F.2d 635 (9th. Cir.), *reh., and reh. en bank denied* (1984), *cert. denied,* 469 U.S. 1061, 105 S.Ct. 544, 83 L.Ed.2d 431 (1984) (noting that the holding of *Compania Espanola,* i.e., that the court had the power to order consolidation, may be interpreted as resting on the consent of the parties).

**3.** In *In re Reefer Express Lines Pty. Ltd.,* No. 86 civ 4490, 1987 WL 11685, * 3 (S.D.N.Y. May 28, 1987) (Available on WESTLAW, 1987 WL 11685), Judge Lowe expressed support for to Judge Edelstein's analysis in *Ore* but refused to decide whether federal courts have the power to order consolidation. She opted, instead, to deny consolidation as an exercise of the court's discretionary power.

*nied,* 469 U.S. 1061, 105 S.Ct. 544, 83 L.Ed.2d 431 (1984), the charterer of a vessel moved for an order to compel consolidation of two separate arbitrations—one with the sub-charterer and the other with the shipowner. The charterer argued that in light of *Compania Espanola* the district court had erred in holding that it lacked the authority to order consolidation.

The Ninth Circuit affirmed the lower court and declined to follow *Compania Espanola.* The Court observed that, in relevant part, § 4 of the Arbitration Act limits a district court's authority to order consolidation: "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement," *Weyerhaeuser,* 743 F.2d at 637. The Court underscored the well-settled principle that an agreement to arbitrate is a creature of contract and that parties may not be forced to arbitrate absent their agreement to do so. It then explained that the proper inquiry for a district court faced with a petition to consolidate is to determine whether an agreement exists and, if so, enforce it " 'in accordance with its terms.' " *Id.* On the facts of the case, the court held that the district court lacked the power to order consolidation because the contract was silent on this point.

■ This Court is bound by *Dean Witter* 's interpretation of Congress' legislative intent and is persuaded by the rationale expressed in *Weyerhaeuser* and *Ore.* The legislative history and wording of the Arbitration Act lead to the ineluctable conclusion that arbitration—being a creature of contract law—can only be ordered if the parties have agreed to arbitration, and then only in accordance with the terms of the agreement. A federal court faced with a motion to consolidate must determine whether an agreement to compel arbitra-

tion exists and, if so, must enforce it according to its terms.

■ Like Judge Edelstein, this Court believes that Rules 42(a) and 81(a)(3) do not authorize federal courts to order consolidation. As explained in *Ore,* Rules 42 and 81 apply to arbitration proceedings only to the extent that matters of procedure are not covered by the Arbitration Act. *See* 81(a)(3), Fed.R.Civ.P. Although Rule 42(a) provides for consolidation of actions involving common questions of law and fact, § 4 of the Arbitration Act forbids the enforcement of an arbitration agreement other than in accordance with its terms. Thus, absent an agreement to consolidate disputes, federal courts are powerless to compel consolidation. *See generally Ore,* 606 F.Supp. at 1513–14.

■ In determining whether to consolidate arbitrations, a court engages in a two-step process. First, the court must find that the parties have agreed to arbitrate. This is accomplished by recourse to general principles of contract and agency law. *McAllister Bros., Inc. v. A & S Transp. Co.,* 621 F.2d 519, 524 (2d Cir.1980). Second, a court must determine whether that agreement encompasses an agreement to consolidate arbitration claims either directly or by implication. An agreement to consolidate may be implied by: (1) the language of the arbitration clause, *see McDonell Douglas Finance Corp. v. Pennsylvania Power & Light Co.,* 858 F.2d 825, 830 (2d Cir.1988); (2) the amendments or addenda to the agreement, *see Compania Espanola,* 527 F.2d at 975; (3) the course of dealing between the parties, *see Pervel Industries, Inc. v. T M Wallcovering, Inc.,* 871 F.2d 7, 8 (2d Cir.1989); or (4) incorporation of rules that permit consolidation, *see McDonell Douglas,* 858 F.2d at 830.[4]

This Court's conclusions are not contrary to the holding of *Compania Espanola.* In *Compania Espanola,* the Second Circuit properly concluded that the guarantor had agreed to consolidated arbitration *because*

---

4. This Court recognizes that in stating that consolidation may be implied it takes a position different from that expressed in *Ore.* Both Second Circuit precedent and ordinary principles

of contract law control the interpretation of agreements to arbitrate and, accordingly, under appropriate circumstances the Court can infer an agreement to consolidate.

*the guarantor signed an addendum to the original contract,* agreeing not only to perform the underlying contract but to accept the rights and obligations of the guaranteed party in the original contract. Because common questions of law and fact permeated the dispute between the agent and charterer and agent and guarantor, the court not only had the power to consolidate but consolidation was, indeed, proper where there was an explicit incorporation of the rights and obligations, including the arbitration agreement, of the original contract.

 By contrast, unlike *Compania Espanola,* the case at issue involves not one but two separate vertical charter agreements. There is no evidence that Coastal and Southern Petroleum agreed to or envisioned consolidated arbitration. Furthermore, there is no evidence that the sub-charter parties adopted, made reference to or engaged in any activity that could lead this Court to find that they are bound to the arbitration agreements between Coastal and Southern Petroleum. In fact the evidence is to the contrary. Although the factual and legal issues between Coastal and Southern Petroleum may seem similar at first glance, Southern Petroleum correctly points out that the perceived commonalities are non-existent: different issues will be raised by each of the sub-charter parties to the charter agreements. This will result in the filing of substantially different claims and counterclaims running up and down two independent charter agreements and involving dissimilar parties.

The absence of explicit language or other indicia that Coastal and Southern Petroleum intended to consolidate their disputes leads this Court to conclude that the parties did not consent to joint arbitration. This Court, therefore, does not have discretion to order consolidation but even if it did have such discretion, would decline to do so under the circumstances of the separate vertical charters. Coastal and Southern Petroleum are ordered to proceed with the independent arbitration of each claim.

III. *Conclusion*

Petitioner's motion to compel consolidated arbitration is DENIED. Coastal and Southern Petroleum are hereby ordered forthwith to appoint separate arbitrators to each dispute within ten (10) days of receipt of this order. The parties will keep the Court apprised of the progress of the arbitration proceedings by filing a status report every six (6) months. The first report is due on July 23, 1992.

SO ORDERED.