The ORE & CHEMICAL CORPORATION, Petitioner,

v.

STINNES INTEROIL, INC. and Sergeant Oil & Gas Co., Inc., Respondents.

No. 84 Civ. 6553 (DNE).

United States District Court, S.D. New York.

April 22, 1985.

Milgrim, Thomajan Jacobs & Lee, P.C., New York City, David P. Langlois, New York City, of counsel, for petitioner.

Parker, Auspitz, Neesemann & Delehanty, P.C., New York City, Jack C. Auspitz and Martin S. Himeles, Jr., New York City, of counsel, for respondent Stinnes Interoil, Inc.

Healy & Baillie, New York City, Raymond A. Connell, New York City, of counsel, for respondent Sergeant Oil & Gas Co., Inc.

## OPINION AND ORDER

EDELSTEIN, District Judge:

The Ore & Chemical Corporation ("OCC") has petitioned this court to compel consolidated arbitration and to appoint arbitrators. Petitioners contend that this court has jurisdiction over the petition, pursuant to 9 U.S.C. § 4 and this court's diversity jurisdiction, 28 U.S.C. § 1332. Respondents Stinnes Interoil, Inc. ("Stinnes") and Sergeant Oil & Gas Co., Inc. ("SOG") contend that the petition should be dismissed because the court lacks the power to compel consolidated arbitration under 9 U.S.C. § 4, and that, in any event, consolidation is not warranted in this case. Because the court agrees with respondents, the petition to compel consolidated arbitration is denied.

## FACTUAL BACKGROUND

For the purposes of this motion, the facts as stated in the petition and in plaintiff's supporting papers are taken as true. OCC is a trader of commodities, including petroleum products. On January 15, 1984, OCC purchased 220,000 barrels of gas oil, plus/minus ten per cent buyer's option, from SOG. The contract provided for delivery at Trinidad during the period February 5 through 10 (the "lifting period") and that OCC was to nominate a vessel to receive the gas oil. The initial OCC–SOG sales agreement did not contain an arbitration clause.

On January 20, 1984, OCC entered into a contract, through a broker, with Stinnes for the sale of the 220,000 barrels of gas oil for delivery during the same "lifting period." The contract was confirmed by a telex from the broker, which provided: "Laws of the State of New York to govern with arbitration in New York." Stinnes also agreed to provide a vessel to load the gas oil, the Tanja Jacobs.

Stinnes's vessel arrived on February 11, 1985, outside the lifting period. OCC contends that SOG did not make the oil available at this point. Stinnes, taking the position that OCC had breached the contract

because it could not produce the contractual amount of the gas oil, sold the cargo for account of OCC in a fallen market, obtaining $1.2 million less than OCC was to have received under the contract. OCC contends that either Stinnes or SOG is liable to it for $1.2 million. If OCC did not breach the OCC-Stinnes contract, then Stinnes is liable to it. If, on the other hand, there was a breach of the OCC-Stinnes contract, OCC contends that SOG is liable to it, because any breach was caused by SOG's failure to make the gas oil available as it was obligated to do under the SOG–OCC contract.

In the weeks following the lifting period, SOG negotiated with OCC for payment under the original sales agreement. On March 5, 1985, the parties entered into an agreement which provided, *inter alia*, "Laws of the State of New York to Apply with Arbitration in New York."

OCC made demands for arbitration under the two contracts. Both Stinnes and SOG have agreed to arbitrate in New York, but they will not agree to consolidated arbitration.

## DISCUSSION

OCC contends that the court should consolidate arbitration because common issues of law and fact between the three parties "predominate" in this action and that OCC would be prejudiced by having to arbitrate separately with SOG and Stinnes, in that it would be subject to the risk of inconsistent verdicts. The Federal Arbitration Act, 9 U.S.C. § 4, provides in pertinent part:

A party aggrieved by the alleged failure, neglect or refusal or another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

In *Compania Espanola de Pet., S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966 (2d Cir.1975), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976), the Court of Appeals for the Second Circuit held that "the liberal purposes of the Federal Arbitration Act clearly require that this act be interpreted so as to permit and even to encourage consolidation of arbitration proceedings in proper cases." *Id.* at 936, 96 S.Ct. at 2650. Since the *Nereus* decision, courts in this circuit "have frequently ordered consolidated arbitration proceedings when the 'interests of justice' so require either because the issues in dispute are substantially the same and/or because a substantial right might be prejudiced if separate arbitration proceedings are conducted." *Matter of Czarnikow-Rionda Co., Inc.*, 512 F.Supp. 1308, 1309 (S.D.N.Y. 1981).

Respondents urge this court to reject *Nereus* on the ground that it is no longer good law. The general rule is that a federal district court is bound by the rule of the circuit. *United States v. Posner*, 549 F.Supp. 475, 476–77 n. 1 (S.D.N.Y. 1982); *Bolf v. Berklich*, 401 F.Supp. 74, 76 (D.Minn.1975). A district court, however, should not rely on older precedents that have been rejected in later decisions. *C.D.R. Enterprises, Ltd. v. Board of Educ. of City of New York*, 412 F.Supp. 1164, 1170 (S.D.N.Y.1976), *aff'd, sub nom.*, *Lefkowitz v. C.D.R. Enterprises, Ltd.*, 429 U.S. 1031, 97 S.Ct. 721, 50 L.Ed.2d 742 (1977). The *Nereus* decision has been rejected by a district court and Court of Appeals for the Ninth Circuit, *Weyerhaeuser Co. v. Western Seas Shipping Co.*, 568 F.Supp. 1220 (N.D.Cal.1983), *aff'd*, 743 F.2d 635 (9th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 544, 83 L.Ed.2d 431 (1984), and is contrary to recent Supreme Court pronouncements on the scope of the Federal Arbitration Act, *see, e.g., Dean Witter Reynolds Inc. v. Byrd*, —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Accordingly, this court opines that if the Court of Appeals for the Second Circuit were to reconsider the issue, it would overrule *Nereus*, and hold that a district court does not

have the power under 9 U.S.C. § 4 to compel consolidated arbitration, where the parties did not provide for consolidated arbitration in the arbitration agreement.

■ The starting point in any case involving the construction of a statute is the language of the statute. *See Byrd, supra,* — U.S. at —, 105 S.Ct. at 1241. Section four of the act, by its terms, does not empower the court to compel consolidated arbitration. It only authorizes the district court to order the parties to arbitrate "in the manner provided for in [the arbitration] agreement." As the court stated in *Weyerhaeuser, supra,* "[t]his provision comports with the statute's underlying premise that arbitration is a creature of contract, and that '[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.'" *Weyerhaeuser, supra,* 743 F.2d at 637 (quoting *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974)). Thus, when the parties themselves have not placed a provision for consolidated arbitration into their arbitration agreement, 9 U.S.C. § 4 does not provide any authority for a court order compelling consolidated arbitration.

Petitioner contends that separate arbitrations exposes OCC to the risk of inconsistent awards, and that consolidated proceedings would be more expeditious. Assuming, *arguendo,* that this is so, the court, nevertheless, does not have the authority to compel consolidated arbitration, absent a provision for consolidation in the contract. In *Byrd, supra,* the Supreme Court "reject[ed] the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims." — U.S. at —, 105 S.Ct. at 1242. The Court in *Byrd* held that the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims, even when the result would be the possibly inefficient maintenance of separate proceedings in different forums. *See also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983) (affirming an order requiring enforcement of an arbitration agreement, even though the arbitration would result in bifurcated proceedings, "because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement") (emphasis in original). The Court stated that "passage of the Act was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered, and we must not overlook this principal objective when construing the statute, or allow the fortuitous impact of the Act on efficient dispute resolution to overshadow the underlying motivation." *Byrd, supra,* — U.S. at —, 105 S.Ct. at 1242. Thus, the Second Circuit's reliance in *Nereus* on the "liberal purposes" of the Arbitration Act was misplaced. 9 U.S.C. § 2 "is a congressional declaration of a liberal policy favoring arbitration agreements," *Moses, supra,* 460 U.S. at 24, 103 S.Ct. at 941, not of reforming them.

The court in *Nereus* also relied on Rules 81(a)(3) and 42(a) of the Federal Rules of Civil Procedure, as support for the statutory authority of federal courts to order consolidated arbitration, when the arbitration agreement does not provide for consolidated arbitration. *Nereus, supra,* 527 F.2d at 975; *accord Robinson v. Warner,* 370 F.Supp. 828, 829–31 (D.R.I.1974). Rule 81(a)(3) provides that in "proceedings under Title 9, U.S.C., relating to arbitration, ... [the Federal Rules of Civil Procedure] apply only to the extent that matters of procedure are not provided for in those statutes." Rule 42(a) provides for consolidation of actions, "when actions involving a common question of law or fact are pending before the court, ..." These rules, however, do not provide sufficient basis for a court, in effect, to reform the parties' contracts and force them to arbitrate their disputes in a manner not provided for in the arbitration agreements. *See Weyerhaeuser, supra,* 568 F.Supp. at 1222 ("agreement to arbitrate only certain disputes or only in a certain manner represents a contractual allocation of risk that the Court may not disturb absent the kind of showing necessary for reformation of an ordinary contract.").

Rule 81(a)(3), by its express terms, does not apply when matters of procedure are provided for in the Arbitration Act. Under 9 U.S.C. § 4, the court is empowered "only [to] determine whether a written arbitration agreement exists, and if it does, to enforce it 'in accordance with its terms.'" *Weyerhaeuser, supra*, 743 F.2d at 637. Thus, 9 U.S.C. § 4 precludes the use of the Federal Rules in a manner that would alter the terms of the arbitration agreements. The court could only compel consolidated arbitration if the arbitration agreements provided for consolidation. *See id.* ("only issue properly before [the district court] is whether [petitioner and respondents] are parties to a written agreement providing for consolidated arbitration."). In this case, SOG only has consented to arbitration with OCC and Stinnes only has consented to arbitration with OCC. Both SOG and Stinnes contend that they were not aware of the other's involvement in the transaction.[1] As the middleman, OCC could have required both Stinnes and SOG to consent to consolidated arbitration. It did not do so.[2] *See Egyptian Co. For Maritime Transfer v. Hamlet Shipping Co., Inc.*, 1982 A.M.C. 874, 877 (S.D.N.Y. 1981) (although court recognized that consolidated proceedings would be costly to petitioners and could result in inconsistent findings, and that a consolidated proceeding would be cheaper and fairer for all

concerned, court refused to consolidate arbitrations, because petitioners "were in the best position to have avoided this situation," and should have "negotiated for the arbitration panels that it seeks this Court to compel when it initially entered into these contracts."). This court is powerless to force the parties to arbitrate other than in the manner provided in the arbitration agreements.

Moreover, it is well established that "[w]hen contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a formal trial." *Burton v. Bush*, 614 F.2d 389, 390 (4th Cir.1980). One of those "procedural niceties" is Rule 42(a)'s provision for consolidation of related actions. Indeed, Rule 42(a) by its express terms only applies to "actions pending before the court." For the court to consolidate cases, the actions to be consolidated must both be pending before the court for all purposes. *Pan Am. World Airways, Inc. v. U.S. Dist. Ct.*, 523 F.2d 1073, 1080 (9th Cir.1975); *In re Penn Central Commercial Paper Litig.*, 62 F.R.D. 341, 344 (S.D.N.Y.1974), *aff'd without opinion, sub nom., Shulman v. Goldman, Sachs & Co.*, 515 F.2d 505 (2d Cir.1975). The "actions" which petitioners seek to consolidate are the arbitrations, which are not now "pending before the court."[3] Accordingly, Rule 42(a) does not provide authority for the

---

**1.** Petitioner has not submitted any direct evidence to refute these contentions. By affidavit submitted November 8, 1984, on behalf of OCC, petitioner's attorney contends that "these statements are untrue by omission. Each party knew that OCC was a trader of commodities and neither a user nor a producer of gas oil. By necessity, the gas oil had to come from another party and had to be sold to another. This cannot be surprising to either Stinnes or [SOG]."

**2.** Respondent SOG has submitted evidence which shows that OCC attempted to insert a provision for consolidated arbitration into the agreement, but SOG would not allow it. By telex dated March 1, 1984, OCC stated that it would pay SOG approximately $6.5 million for the gasoil, on the condition that SOG "agrees in writing to the following:
 -arbitration in New York, NY pursuant to the laws of the State of New York.

 -a consolidated arbitration if ordered by a New York judge."
The final arbitration agreement did not provide for consolidated arbitration, but only "laws of the State of New York to apply to arbitration in New York." OCC does not dispute this evidence but contends that it is irrelevant. Indeed, OCC has conceded that it was SOG's intent not to have consolidated arbitration. Affidavit of David P. Langlois at ¶ 8 ("[SOG's] attempts to put in language *excluding* consolidation were specifically rejected.") (emphasis in original).

**3.** If two arbitration proceedings are completed and separate actions are brought in federal court to confirm the arbitration awards, these confirmation proceedings would be "actions pending before the court," and thus could be consolidated under Rule 42(a), provided the court found common issues of law or fact.

court to order consolidation of the arbitration proceedings.

 Even if this court had the power to compel consolidated arbitration, it may refuse to do so in the exercise of its discretion. Procedural matters such as this are best suited for resolution by the arbitrator. *Local 469 International Brotherhood of Teamsters v. Hess Oil & Chem. Corp.*, 226 F.Supp. 452, 455–56 (D.N.J.1964); *see Stewart M. Muller Constr. Co., Inc. v. Clement Ferdinand & Co.*, 36 A.D.2d 814, 320 N.Y. S.2d 277 (N.Y.App.1971). The issue as to whether these arbitrations should be arbitrated together involves an analysis, not only of the transaction, but of custom and usage in the industry. Petitioner contends that common questions of law "predominate" in this case. Respondents SOG and Stinnes, on the other hand, each contend that their disputes with OCC each contain legal and factual issues that are not applicable to the other. For example, Stinnes contends that OCC's claims against it are barred by OCC's waiver of the delivery date in the contract and OCC's failure to provide adequate assurances of performance under Section 2–609 of the Uniform Commercial Code. Stinnes also contends that these issues are not applicable to SOG. OCC contends that it passed to Stinnes the assurances received from SOG. It is more efficient to let the arbitrators, the ones who will be deciding the merits of the matter, decide how the issues are to be adjudicated.[4] *See John Wiley & Sons v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964) ("Once it is determined, ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.").

This case is distinguishable from other cases in which courts have consolidated arbitration, in that the arbitration clauses do not reflect an intent to agree to consolidation. The arbitration clauses were silent as to an arbitration panel. *Cf. Farr Man Suplicy, Inc. v. Van Ekris & Stoett, Inc.*, 101 A.D.2d 756, 475 N.Y.S.2d 73, 74 (N.Y. App.1984) (both contracts contained a provision for arbitration between the Green Coffee Association). Moreover, the arbitration clause did not provide for arbitration of all disputes arising out of the purchase and sale of the gas oil. *Cf. Nereus, supra*, 527 F.2d at 970 (contract provided that "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration ...."). The court cannot infer from these arbitration clauses an intent to consent to consolidated arbitration.

 Petitioner has submitted a list of consolidated arbitrations conducted under the auspices of the Society of Maritime Arbitrators, Inc. in New York. Exhibit 6 to Affidavit of David P. Langlois, April 8, 1984. Based on this list, petitioner contends that "consolidation is so common and expected that commercial parties impliedly consent by force of controlling law when they adopt arbitration and New York law in their contracts."[5] Langlois Affidavit at

---

4. Arbitrators have a broad range of procedural powers, aside from ordering consolidation, to effectuate the fair and efficient resolution of arbitrable disputes. Arbitrators, for example, may grant continuances and order split hearings. The court should not deprive the arbitrators of this discretion.

 Pursuant to Rule 81(a)(3), some courts have allowed the regulation of discovery during the arbitration proceedings by the Federal Rules. However, this is only permitted "upon a showing of a true necessity because of an exceptional situation." *Penn Tanker Co. of Del. v. C.H.Z. Rolimpex, Warszawa*, 199 F.Supp. 716, 718 (S.D. N.Y.1961). Petitioners have not convinced the court of any necessity for the application of Rule 42(a) in this case. They have only asserted

that it would be more convenient to have the arbitrations consolidated.

5. Under New York State law, state courts have the power to consolidate arbitrations. *Sullivan County v. Edward L. Nezelek, Inc.*, 42 N.Y.2d 123, 397 N.Y.S.2d 371, 366 N.E.2d 72 (1977). However, New York law does not apply. It is well settled that The Federal Arbitration Act and the federal cases construing it control enforcement of arbitration agreements, even where, as here, the agreement contains a New York choice of law provision. *Masthead Mac Drilling Corp. v. Fleck*, 549 F.Supp. 854, 856 (S.D.N.Y.1982). Thus, petitioner's discussion of New York law on pages ten through twelve of its reply memorandum is inapposite.

¶ 12. This argument proves too much. If consolidated arbitration is so common and expected, in the industry, then the industry's participants should make consolidation provisions standard in their arbitration clauses. Under 9 U.S.C. § 4, arbitration cannot be compelled based on implied, or even oral consent, but only on the basis of a written agreement. *Garnac Grain Co., Inc. v. Nimpex Int'l, Inc.*, 249 F.Supp. 986 (S.D.N.Y.1964). Moreover, there is no person better suited to determine whether consolidated arbitration is "common and expected" in the industry, or warranted in this case, than an arbitrator familiar with industry practice.

OCC also requests the court to order arbitration before the American Arbitration Association ("AAA") and to direct appointment of neutral arbitrators through the AAA. Respondents contend that the issue of appointment of arbitrators is premature until the court rules on the issue of consolidation. Respondents request the court to give the parties an opportunity to reach agreement on the issue of appointment of arbitrators after the court decides the consolidation issue. Accordingly, the parties are given until May 13, 1985 to reach agreement on the issue of appointment of arbitrators. If no agreement has been reached at that point, the court will reconsider the exercise of its authority, pursuant to 9 U.S.C. § 5, to appoint arbitrators.

### CONCLUSION

The petition to compel consolidated arbitration and to appoint arbitrators is denied. The parties are hereby given until May 13, 1985, to reach agreement on the selection of arbitrators.

SO ORDERED.