OPINION OF THE COURT
Myriam J. Altman, J.
In this special proceeding to direct consolidation of several arbitration proceedings under the Federal Arbitration Act (FAA) (9 USC §1 et seq.), defendant moves to dismiss on the ground that this court lacks the authority to direct such consolidation. For the reasons set forth, I hold that the Su *543 preme Court may order consolidation of arbitration proceedings and that consolidation is appropriate under the specific circumstances of this case.
Petitioners entered into separate individual account agreements with respondent Drexel Burnham Lambert Incorporated (Drexel) on various dates between 1981 and 1982. Each of the agreements between Drexel and the petitioners contains an arbitration clause for the resolution of “any controversy”.[1] The agreements are silent with respect to the issue of consolidation.
In October 1986, the petitioners filed suit in the United States District Court for the Southern District of New York claiming that Drexel, through one of its agents, had engaged in fraudulent transactions in violation of Federal securities laws and the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 USC § 1961 et seq.) and in breach of its fiduciary duties to the petitioners.[2] At the time there was disagreement among the several circuits concerning the arbitrability of. controversies involving securities transactions. However, since this specific issue was before the United States Supreme Court, the District Court (Conner, J.) stayed the action pending the resolution of that case. In Shearson/American Express v McMahon (482 US 220), the Supreme Court held the provisions of the FAA applicable to RICO and securities fraud claims. Thereafter, petitioners discontinued the Federal action.
Petitioners then filed a consolidated petition before the American Arbitration Association (AAA) alleging the same causes of action. Drexel was opposed to any form of consolidation and filed seven separate answers with the AAA. Initially the AAA, after oral and written communications with the parties, decided to arbitrate this controversy in a consolidated fashion "in the absence of a court order or the agreement of the Parties to the contrary”. Drexel immediately commenced a proceeding in Supreme Court, New York County, seeking a *544 severance order.[3] Petitioners removed the proceeding to the Southern District claiming Federal jurisdiction based on the FAA and Federal statutory rights under the Securities Exchange Act of 1934 (see, Drexel Burnham Lambert v Bock, 696 F Supp 957). The District Court (Leval, J.) held that Drexel’s State petition had been improperly removed and ordered a remand to the State court. Before a decision could be rendered on Drexel’s application, the AAA informed the parties that its prior determination to permit a consolidated arbitration was a "mistake” and asked the petitioners to proceed individually. Petitioners then commenced this proceeding seeking an order consolidating the arbitration before the AAA. The issues presented are: (1) whether this court has the authority to order the AAA to consolidate petitioners’ claims; and (2) if such authority exists, whether consolidation is proper in this case.
Written agreements to arbitrate in matters involving, inter alia, interstate commerce are governed by the FAA (9 USC §§ 1, 2). Agreements between customers and brokerage firms are covered by the act because securities transactions involve interstate commerce (Shearson/American Express v McMahon, supra). Federal and State courts have concurrent jurisdiction to enforce the provisions of the FAA. Absent Federal question jurisdiction under 28 USC § 1331, a State court is the only forum in which to assert rights arising under the act because the FAA itself does not confer Federal jurisdiction (Moses H. Cone Hosp. v Mercury Constr. Corp., 460 US 1, 25, n 32).
Petitioners seek consolidation pursuant to 9 USC § 4 which provides, in relevant part: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition * * * for an order directing that such arbitration proceed in the manner provided for in such agreement” (emphasis added). Drexel claims that section 4 provides no basis for court intervention because respondent is willing to arbitrate and the customer agreements do not specifically authorize consolidation.
Drexel’s "willingness” to proceed with arbitration is, however, not absolute, but contingent on having seven separate arbitrations. Since Drexel objects to a consolidated hearing, the relief sought in this petition — a construction of the man *545 ner in which arbitration is to proceed — is properly before me pursuant to 9 USC § 4.
Drexel next contends that even if I entertain petitioners’ application, the AAA’s decision to sever the previously consolidated proceeding is not reviewable and cannot be overturned because the AAA, as a matter of policy, does not permit consolidated claims. In support of this contention and by way of analogy, Drexel cites cases wherein the AAA’s choice of venue was held nonreviewable by the courts (see, Matter of D.M.C. Constr. Corp. v Nash Steel Corp., 41 NY2d 855; Matter of Royal Globe Ins. Co. v Spain, 36 AD2d 632; Aerojet-General Corp. v American Arbitration Assn., 478 F2d 248). Those cases are distinguishable because the AAA charter contains an explicit venue provision granting the AAA power to determine the locale of the arbitration in the absence of the parties’ agreement (see, Aerojet-General Corp. v American Arbitration Assn., supra, at 250, n 1). As to consolidation, however, the AAA charter is silent. If the AAA had a rule, as it does for venue, prohibiting or allowing consolidation, then a determination made pursuant to such rule would be reviewable only under very limited circumstances (see, supra at 251). A specific rule gives both parties adequate notice as to the terms of their arbitration agreement, while an administrative policy does not allow the parties to ascertain their rights and obligations. In this case, there is no evidence that an administrative policy precluding consolidated arbitrations actually exists. When petitioners originally filed a consolidated petition, the AAA informed the parties that it would proceed accordingly "in the absence of a court order or the agreement of the Parties to the contrary” (emphasis added). Thus Drexel’s claim that the AAA has a binding administrative process by which it decides whether or not to consolidate proceedings is contravened by the AAA’s own statement to the contrary. Apparently, the AAA recognizes that consolidation may be the subject of a court order (see, Robinson v Warner, 370 F Supp 828, 829, in which the AAA indicated "that it [would] abide by the Court’s order in the event a consolidated arbitration is deemed appropriate”; see also, Matter of Vigo S. S. Corp. [Marship Corp.], 26 NY2d 157, cert denied sub nom. Snare Corp. v Vigo S. S. Corp., 400 US 819; Matter of Symphony Fabrics Corp. [Bernson Silk Mills], 12 NY2d 409). There are, therefore, no administrative obstacles to ordering consolidation.
Petitioners claim that courts generally have the authority to order consolidation of arbitration proceedings under State *546 and Federal law (see, Compania Espanola de Petroleos v Nereus Shipping, 527 F2d 966, cert denied 426 US 936; New England Energy v Keystone Shipping Co., 855 F2d 1, cert denied — US —, 109 S Ct 1527; Sociedad Anonima de Navegacion Petrolera v CIA. de Petroleos, 634 F Supp 805; Cable Belt Conveyors v Alumina Partners, 669 F Supp 577; Matter of Vigo S. S. Corp. [Marship Corp.], supra). Drexel, on the other hand, contends that State law is inapplicable and that under Federal law the courts have no power to order consolidation in the absence of an explicit contractual provision (see, Webb Constr. v Richardson Hosp. Auth., 823 F2d 145; Weyerhaeuser Co. v Western Seas Shipping Co., 743 F2d 635, cert denied 469 US 1061; Ore & Chem. Corp. v Stinnes Interoil, 606 F Supp 1510).
The FAA "creates a body of federal substantive law” which governs arbitration agreements covered by its terms (Moses H. Cone Hosp. v Mercury Constr. Corp., supra, at 25, n 32). Thus, Federal law is applicable in determining the validity and enforceability of an arbitration agreement (New England Energy v Keystone Shipping Co., supra). Federal law favors arbitration and requires the rigorous enforcement of an agreement to arbitrate, which is not to be limited or constrained by State law (Southland Corp. v Keating, 465 US 1). State law may, however, supplement the FAA "on matters collateral to the agreement to arbitrate” (New England Energy v Keystone Shipping Co., supra, at 4, n 2). Matters of procedure in FAA applications brought in State courts may be left to the States (see supra; Southland Corp. v Keating, supra, at 16, n 10; see also, McLaughlin, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C7501.11, at 28 [1989 Pocket Part]).
Here, the manner in which arbitration is to go forward is a procedural matter. "Simply put, arbitration is still arbitration even if it is consolidated arbitration” (New England Energy v Keystone Shipping Co., supra, at 5). The New York Court of Appeals has also held that if the manner in which a State court enforces an arbitration agreement subject to the FAA is not outcome determinative, procedural issues such as consolidation are within the inherent power of the court (Matter of Vigo S. S. Corp. [Marship Corp] 26 NY2d 157, supra; cf., Matter of Rederi [Dow Chem. Co.], 25 NY2d 576). Consolidation "is not in any way determinative of the outcome of the disputes on the merits since it merely involves the question whether two, rather than one, arbitration proceedings are to *547 be used to decide common issues” (Matter of Vigo S. S. Corp. [Marship Corp.], supra, at 162).
Dean Witter Reynolds v Byrd (470 US 213) (Byrd) does not compel a different conclusion. In Byrd, the Supreme Court held that the "Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums” (supra, at 217). The Byrd court, however, never discussed the issue of consolidation of arbitration proceedings but rather focused on "some courts’ reluctance to enforce agreements to arbitrate” (Cable Belt Conveyors v Alumina Partners, supra, at 580; Sociedad Anonima de Navegacion Petrolera v CIA. de Petróleos, supra, at 809). In the instant proceeding, there is nb question as to whether the dispute should be resolved through arbitration. The only issue is whether consolidation is warranted.
The application of State law does not contravene any Federal policy nor does it limit or constrain the enforcement of the arbitration agreement. There is no uniform Federal policy or rule prohibiting consolidation. Presently, there is disagreement among the several circuits as to the propriety of ordering consolidation in the absence of an explicit provision in the parties’ arbitration agreement. In the absence of a Supreme Court ruling or uniformity in the lower Federal courts, a State court "is not precluded for exercising its own judgment or bound to follow the decision of the Federal Circuit Court of Appeals within the territorial boundaries of which it sits” in interpreting the relevant provisions of the FAA (Flanagan v Prudential-Bache Sec., 67 NY2d 500, 506, cert denied 479 US 931). Therefore, even if only Federal cases were controlling, I would still be required to evaluate the policy reasons adopted by the several circuits and follow those cases that are more consonant with the letter and spirit of the FAA.
In Compania Espanola de Petroleos v Nereus Shipping (supra), a vessel owner, Nereus, and a charterer, Hidrocarburos y Derivados (HIDECA), entered into a maritime contract of affreightment. The contract contained an arbitration clause for the resolution of any and all controversies. Later CEPSA, a Spanish oil company, signed a letter of guarantee to perform the balance of any obligations that HIDECA might owe to Nereus. When a dispute arose between Nereus and HIDECA, Nereus objected to a consolidation of arbitrations between Nereus and CEPSA and HIDECA and Nereus, absent the *548 consent of the parties (supra, 527 F2d, at 974-975). In rejecting Nereus’ argument, the Second Circuit held that "there is more than ample support in the case law for the propriety of a court’s consolidation of arbitrations under the federal statute. * * * We agree that Fed.R.Civ.P., Rules 42(a) and 81(a)(3), are applicable. Moreover, we think the liberal purposes of the Federal Arbitration Act clearly require that this act be interpreted so as to permit and even to encourage the consolidation of arbitration proceedings in proper cases, such as the one before us” (supra, at 975; see also, New England Energy v Keystone Shipping Co., supra; Sociedad Anonima de Navegacion Petrolera v CIA. de Petroleos, supra; Cable Belt Conveyors v Alumina Partners, supra).
In Weyerhaeuser Co. v Western Seas Shipping Co. (supra), the Ninth Circuit held to the contrary. Relying on the language of 9 USC § 4, it found that a court "can only determine whether a written arbitration agreement exists, and if it does, enforce it 'in accordance with its terms’ ” (supra, 743 F2d, at 637). Since arbitration is a creature of contract and the arbitration agreement did not specifically refer to consolidation, such remedy was deemed to be precluded (see also, Webb Constr. v Richardson Hosp. Auth., 823 F2d 145, supra; Ore & Chem. Corp. v Stinnes Interoil, 606 F Supp 1510, supra).
The split in the circuits results from differing interpretations of rule 81 (a) (3) and rule 42 (a) of the Federal Rules of Civil Procedure. Rule 81 (a) (3) provides, in relevant part: "In proceedings under Title 9, USC, relating to arbitration * * * these rules apply only to the extent that matters of procedure are not provided for in those statutes.” Rule 42 (a) provides: "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.”
In Ore & Chem. Corp. v Stinnes Interoil (supra), the court denied consolidation stating: "Rule 81(a)(3), by its express terms, does not apply when matters of procedure are provided for in the Arbitration Act. Under 9 U.S.C. § 4, the court is empowered 'only [to] determine whether a written arbitration agreement exists, and if it does, to enforce it "in accordance with its terms.” ’ * * * Thus, 9 U.S.C. § 4 precludes the use of the Federal Rules in a manner that would alter the terms of the arbitration agreements. The court could only compel *549 consolidated arbitration if the arbitration agreements provided for consolidation” (supra, 606 F Supp, at 1514).
This prohibition of consolidation in the absence of an express agreement has the effect of making rule 81 (a) (3) superfluous. The outcome would be the same even if rule 81 (a) (3) were not included in the Federal Rules of Civil Procedure because the court imposes a complete bar to consolidation in the absence of an express provision allowing it. If the parties expressly provide for consolidation, it is the contract itself and not rule 81 (a) (3) which will permit consolidation. In such a case, the reference in 9 USC §4 to enforcing an arbitration “in the manner provided” for in the agreement would necessarily incorporate the consolidation clause, independent of rule 81 (a) (3).
The cases which have permitted consolidation enforce the parties’ explicit contractual agreement as to procedure, and only rely on rule 81 (a) (3) and rule 42 (a) when the arbitration agreement makes no reference to consolidation. I find that such an interpretation is consistent with the inclusion of rule 81 (a) (3) in the Federal Rules and that, under Federal law, a court may order consolidation of arbitration proceedings when the parties’ agreement is silent on the point.
Finally, Drexel argues that because the cases which have permitted consolidation involved a three-way relationship, consolidation is improper where there is no relationship among the petitioners, but rather a separate contract between each petitioner and Drexel. However, in the cases where consolidation was ordered, the courts looked to common issues of fact or law and a possibility of inconsistent awards. The test is a general one and the fact that it has been applied to cases where a three-way relationship existed does not necessarily limit its applicability to such factual situations. In determining that consolidation was proper, the courts considered the power to consolidate generally and did not limit that authority to any particular set of facts (Compania Espanola de Petroleos v Nereus Shipping, supra; New England Energy v Keystone Shipping Co., supra; Sociedad Anonima de Navegacion Petrolera v CIA. de Petroleos, supra).
Having determined that a court may order consolidation of arbitration proceedings, I now turn to the issue of the propriety of consolidation in this case. Consolidation may be ordered when there are common issues of law or fact in the absence of prejudice to a substantial right of a party (Matter *550 of Vigo S. S. Corp. [Marship Corp.], 26 NY2d 157, supra). The party opposing consolidation has the burden of demonstrating prejudice.
Here, common issues of both law and fact exist. As to their RICO claims, petitioners must demonstrate a pattern of illegal activity, an issue which is common to each claim.[4] Further, petitioners have submitted a copy of the sworn testimony of the particular broker in question taken at another arbitration proceeding. The broker stated that he routinely invested in huge blocks in the same securities for all of his clients, and prorated any earnings or losses in the exact proportion of each customer’s investment.
If separate hearings were held, each of the petitioners would be required to testify at each proceeding. Further, the expert retained by petitioners would also have to testify at each separate proceeding. A consolidated arbitration would, therefore, be much more efficient and less costly and time consuming. As arbitration is designed to provide a forum for more efficient dispute resolution, consolidation is appropriate under the circumstances.
Further, while no single petitioner individually risks inconsistent determinations, there is the possibility of conflicting awards based on the same alleged pattern of activity.
Drexel has failed to meet its burden of demonstrating prejudice. Its contention that the arbitrators will be confused and unable to separate the claims is not substantiated. "The mere desire to have one’s dispute heard separately does not, by itself, constitute a 'substantial right’ ” (Matter of Vigo S. S. Corp. [Marship Corp.] supra, at 162).
Accordingly, petitioners’ application is granted and the parties are directed to arbitrate in one consolidated arbitration proceeding.

. The pertinent part of the agreements regarding resolution of disputes provides: "Any controversy arising out of this Agreement or my Securities Account or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of the American Arbitration Association, the New York Stock Exchange, Inc., the American Stock Exchange, Inc., or the National Association of Securities Dealers, Inc., as I may elect.”

. See, de Valenzuela v Drexel Burnham Lambert, 86 Civ 7587.

. See, Drexel Burnham Lambert v Bock, index No. 7734/88, filed Apr. 11, 1988.

. The merit or lack of merit to petitioners’ RICO claims is not an issue before me in this proceeding.