In the Application of P/R CLIPPER GAS, Petitioner,

v.

PPG INDUSTRIES, INC., and Georgia Gulf Corporation, Respondents.

No. 92 Civ. 2181 (SWK).

United States District Court, S.D. New York.

Oct. 23, 1992.

Haight, Gardner, Poor & Havens by William J. Honan, III, New York City, for petitioner.

Connell Losquadro & Zerbo by Raymond A. Connell, New York City, for respondent PPG Industries, Inc.

Hill Rivkins Loesberg O'Brien Mulroy & Hayden by George F. Chandler, III, New York City, for respondent Georgia Gulf Corp.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Petitioner P/R Clipper Gas ("Clipper Gas"), seeks an order directing respondent PPG Industries, Inc. ("PPG"), to join a pending arbitration involving Clipper Gas and Georgia Gulf Corporation ("Georgia Gulf"). PPG opposes the request for consolidation. For the reasons stated herein, Clipper Gas's petition to compel consolidated arbitration is granted.

### FACTS [1]

Clipper Gas is, and was at all relevant times, the owner of the LPG Tanker Clipper Gas ("Tanker"). PPG and Georgia Gulf are both charterers of the Tanker. By a written agreement, dated February 16, 1989, respondent PPG chartered Clipper Gas's Tanker to carry approximately 6,500 metric tons of vinyl chloride monomer, from Lake Charles, Louisiana to Ulsan, South Korea. The charter agreement contained an arbitration provision that provided in relevant part:

Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York ... before a board of three persons, consisting of one arbitrator to be appointed by the Owner [Clip-

---

1. For purposes of this motion, the Court relies on the undisputed facts set forth in Clipper Gas's verified petition. *See* Verified Petition of P/R Clipper Gas, dated March 20, 1992.

per Gas], one by the Charterer [PPG], and one by the two so chosen.

For the same voyage, Clipper Gas entered into a separate agreement with Georgia Gulf to carry approximately 3,500 metric tons of vinyl chloride monomer from Plaquemine, Louisiana to Pasir Gudang, Malaysia. The Georgia Gulf agreement contained the same arbitration provision as that found in the PPG charter agreement, quoted above. Both Georgia Gulf and PPG agreed to the commingling of their respective cargoes of vinyl chloride monomer.

The PPG cargo of vinyl chloride monomer was loaded first and then fully commingled with the Georgia Gulf parcel. The Tanker then proceeded to its first port, Ulsan, Korea, where the 6,500 metric tons of vinyl chloride monomer belonging to PPG were unloaded without apparent difficulty. The Tanker then proceeded to Pasir Gudang, Malaysia to unload the remaining 3,500 metric tons of vinyl chloride pursuant to the Georgia Gulf charter. At Pasir Gudang, however, the receiver refused to accept the Georgia Gulf parcel, claiming that there was a small quantity of water mixed in with the cargo. As a result of this claim of contamination by the receiver in Malaysia, Clipper Gas's Tanker was detained in port until an alternative purchaser for the cargo was found by Georgia Gulf. This delay resulted in damages to Clipper Gas of $177,047.50 which Georgia Gulf refused to pay. To recover the demurrage, Clipper Gas commenced an arbitration proceeding against Georgia Gulf in New York City. In response, Georgia Gulf asserted a counterclaim against Clipper Gas in the amount of $427,924.02 for the alleged contamination of the cargo. Clipper Gas replied that the alleged contamination was not caused by Clipper, but rather, was caused by either PPG or Georgia Gulf.

At this point, Clipper Gas and Georgia Gulf have each selected one arbitrator, Mr. Manfred Arnold and Mr. Jack Berg, respectively. Messrs. Arnold & Berg appointed Richard B. Tesiman as the third arbitrator and Panel Chairman. Although the Panel has been selected and disclosures have been made in writing, no hearings have been held or are scheduled.

By letter dated January 9, 1992, counsel for Clipper Gas demanded that PPG submit to arbitration, and consolidate with the pending Clipper Gas–Georgia Gulf proceeding. By letter dated February 11, 1992, counsel for PPG rejected the demand for arbitration. Both Clipper Gas and PPG have agreed to arbitrate in New York, but PPG will not agree to consolidation.

Clipper Gas contends that the Court should consolidate the arbitrations as common issues of fact between the three parties predominate this action, and because a consolidated proceeding would be more expeditious and reduce the risk of inconsistent awards. Although PPG does not refuse to arbitrate with Clipper Gas, PPG objects to what it terms a "preemptory demand [by Clipper to force] PPG [to] join an arbitration pending for two years between Clipper Gas and Georgia Gulf." *See* Memorandum in Opposition to the Petition of P/R Clipper Gas, dated April 17, 1992 ("PPG Opp."), at 7. PPG claims that as the charter agreement does not provide for a consolidated arbitration with Georgia Gulf, a consolidated arbitration with Georgia Gulf cannot be ordered. Specifically, PPG asserts that: (1) the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, acceded to by the United States in 1970 and implemented by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.* (1970), prohibits this Court from forcing the parties to arbitrate in any manner other than that specified by arbitral agreement, thus precluding consolidated arbitration with Georgia Gulf; (2) even if this Court could force PPG to join the Clipper Gas–Georgia Gulf arbitration, Clipper Gas waived its rights to demand consolidation by waiting until the arbitration panel was selected, documents were submitted, and the proceeding had been pending for two years; (3) Clipper Gas is estopped from demanding a consolidation which would result in substantial prejudice to PPG; and (4) the existing arbitration panel must be dismantled as the panel selection was done without PPG's knowledge or participation,

and PPG may not be denied its right of arbitrator selection. PPG Opp. at 7–8.

## DISCUSSION

### I

■ The Federal Arbitration Act, 9 U.S.C. § 4, provides in pertinent part:

A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

Although the Federal Arbitration Act permits this Court to order arbitration "in accordance with the terms of the [parties'] agreement," the Act is not clear as to whether the Court may order an arbitration that is not specifically provided for by agreement. Thus, as a threshold matter, this Court must decide whether it has authority to compel a consolidated arbitration when consolidation is not provided for in the arbitration agreement.

In *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966 (2d Cir.1975), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976), the Second Circuit held that "the liberal purposes of the Federal Arbitration Act clearly require that this act be interpreted so as to permit and even to encourage the consolidation of arbitration proceedings in proper cases, such as the one before us." *Id.* at 975 (citations omitted). The Second Circuit has never reversed this holding, and numerous decisions since *Nereus* agree that district courts can compel consolidated

arbitration. *See Rio Energy Int'l, Inc. v. Hilton Oil Transport*, 776 F.Supp. 120, 122 (S.D.N.Y.1991); *Elmarina, Inc. v. Comexas, N.V.*, 679 F.Supp. 388, 392 (S.D.N.Y. 1988); *In re Czarnikow–Rionda Co., Inc.*, 512 F.Supp. 1308, 1309–1310 (S.D.N.Y. 1981).

PPG points out, however, that *Nereus* has been criticized by several courts, *see Weyerhaeuser Co. v. Western Seas Shipping Co.*, 743 F.2d 635 (9th Cir.), *cert. denied*, 469 U.S. 1061, 105 S.Ct. 544, 83 L.Ed.2d 431 (1984); *Ore & Chemical Corp. v. Stinnes Interoil, Inc.*, 606 F.Supp. 1510 (S.D.N.Y.1985), and was completely undercut by the Supreme Court's decision in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). According to PPG, these cases hold that a district court may not compel consolidated arbitration where the parties' agreements do not expressly provide for such consolidation. This Court finds PPG's contention unpersuasive.

■ First, although the Ninth Circuit rejected *Nereus* and concluded that district courts do not have authority to consolidate arbitration proceedings, *Weyerhaeuser* is not controlling precedent in this district. In fact, since the *Weyerhaeuser* decision, this Court has ordered consolidation in other Southern District cases. *See Rio Energy Int'l, Inc. v. Hilton Oil Transport*, 776 F.Supp. at 122; *Elmarina, Inc. v. Comexas, N.V.*, 679 F.Supp. 388, 392 (S.D.N.Y. 1988); *Cable Belt Conveyors, Inc. v. Alumina Partners*, 669 F.Supp. 577, 583 (S.D.N.Y.), *aff'd*, 857 F.2d 1461 (2d Cir.), *cert. denied*, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987); *Sociedad Anonima de Navegacion Petrolera v. CIA. de Petroleos de Chile S.A.*, 634 F.Supp. 805, 809 (S.D.N.Y.1986). Thus, PPG's reliance upon *Weyerhaeuser* is misplaced.[2]

■ Second, the arbitration agreement at issue in *Weyerhaeuser* contained a nar-

---

2. The general rule is that the federal district court is bound by the rule of the circuit. *United States v. Posner*, 549 F.Supp. 475, 476–77 n. 1 (S.D.N.Y.1982). Therefore, decisions of the Eleventh Circuit, *Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp.*, 873 F.2d 281, 282

(11th Cir.1989), Fifth Circuit, *Del E. Webb Constr. v. Richardson Hosp. Auth.*, 823 F.2d 145 (5th Cir.1987), and Eighth Circuit, *Baesler v. Continental Grain Co.*, 900 F.2d 1193, 1195 (8th Cir.1990), are not binding authority.

row arbitration clause, which unlike the Clipper Gas–PPG agreement, expressly "required only arbitration *between the parties to the agreement."* *Weyerhaeuser Co. v. Western Seas Shipping Co.,* 743 F.2d at 637 (emphasis added). The Clipper Gas–Georgia Gulf and Clipper Gas–PPG arbitration clauses are not limited to disputes arising solely between the owner and charterer, but rather, call for arbitration of *"[a]ny and all* differences and disputes of whatsoever nature arising out of this Charter." *See* Tanker Voyage Charter Party, annexed as Exhibit "1" to Verified Petition of P/R Clipper Gas, dated March 20, 1992, at ¶ 24 (emphasis added). Prior decisions of this Court note that arbitration clauses which provide for arbitration of "all" disputes evidence an intent by the parties to consolidate related arbitrations. *See Ore & Chemical Corp. v. Stinnes Interoil, Inc.,* 606 F.Supp. at 1515; (distinguishing between arbitration agreements calling for arbitration of *all* disputes and those requiring arbitration *between* the parties); *Reefer Express Lines Pty., Ltd. v. Mediteranska Plovidba,* 86 Civ. 4490, 1987 WL 11685, at *3 (S.D.N.Y. May 28, 1987) (same); *see also Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.,* 527 F.2d at 973. As the parties in the matter at hand agreed upon language requiring arbitration of all disputes, not solely those arising between Clipper Gas and PPG, consolidation is implicit.

Third, contrary to Judge Edelstein's opinion in *Ore & Chemical Corp. v. Stinnes Interoil, Inc.,* 606 F.Supp. 1510 (S.D.N.Y. 1985), the Supreme Court's decision in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), did not overrule *Nereus.* In *Byrd,* an investor brought suit in federal court against his broker, alleging federal securities law violations and pendent state law claims. The broker, assuming the federal securities act claims non-arbitrable, moved to compel arbitration, pursuant to the customer agreement, of only the pendent state law claims. The district court denied the motion, and the Ninth Circuit affirmed. *See Byrd v. Dean Witter Reynolds, Inc.,* 726 F.2d 552, 553 (9th Cir.1984). The Su-

preme Court reversed, holding that where a valid agreement to arbitrate exists, a district court could not deny arbitration of the pendent state claims in favor of trying all claims together in federal court. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. at 217, 105 S.Ct. at 1241. Even though the simultaneous arbitration of the pendent state claims and litigation of the federal securities violations in federal court might lead to inconsistent results and needless duplication of resources, the Supreme Court held that as "[t]he preeminent concern of Congress in passing the [Arbitration] Act was to enforce private agreements into which parties had entered, ... we [will] rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation...." *Id.* at 221, 105 S.Ct. at 1241–42.

The Supreme Court did not address, however, whether a district court has the power to consolidate arbitration of two related proceedings. *Sociedad Anonima de Navegacion Petrolera v. CIA. de Petroleos de Chile S.A.,* 634 F.Supp. at 808. Rather, the Supreme Court, relying upon what it found to be Congress' intent of overcoming judicial reluctance to order arbitration, compelled arbitration of claims when a motion to compel arbitration was pending. *Byrd,* 470 U.S. at 219, 105 S.Ct. at 1242. Thus, *Byrd* did not overrule *Nereus* and provides no contrary precedent.

Moreover, Judge Edelstein's prediction in *Ore & Chemical Corp. v. Stinnes Interoil, Inc.,* 606 F.Supp. 1510, 1512 (S.D.N.Y. 1985), that the Second Circuit would reverse its opinion in *Nereus* in light of *Weyerhaeuser* and *Byrd* has not been born out. Relying on *Byrd* for the proposition that private arbitration agreements must be enforced as written, regardless of any consequent inefficiency, Judge Edelstein denied a petition to compel consolidated arbitration. *See Ore & Chemical Corp. v. Stinnes Interoil, Inc.,* 606 F.Supp. at 1511. In reaching his decision, the Judge opined that "if the Court of Appeals for the Second Circuit were to reconsider the issue, it would overrule *Nereus,* and hold that a district court does not have the power un-

der 9 U.S.C. § 4 to compel consolidated arbitration, where the parties did not provide for consolidated arbitration in the arbitration agreement." *Id.* at 1512–1513. Contrary to Judge Edelstein's opinion, however, the Second Circuit has not addressed the issue since *Nereus*, nor has a decision of the Circuit indicated that the vitality of *Nereus* is questionable. Furthermore, no other court in this district has reached the same conclusion as Judge Edelstein.[3] *See Elmarina, Inc. v. Comexas, N.V.,* 679 F.Supp. at 391; *Sociedad Anonima de Navegacion Petrolera v. CIA. de Petroleos de Chile S.A.,* 634 F.Supp. at 809; *Shoyo Shipping Co., Ltd. v. Shipmair, B.V.,* 86 Civ. 2148, 1986 WL 11607, at *2 (S.D.N.Y. May 7, 1986). Thus, despite Judge Edelstein's arguments to the contrary, this Court is bound to abide by the overwhelming weight of authority in this circuit and follow *Nereus.*

## II

■ Having concluded that this Court has the power to compel consolidated arbitration, the Court must determine whether it should exercise this discretionary power. Consolidation is only proper in certain circumstances, namely where there are common questions of law or fact and a possibility of conflicting awards or inconsistent results. *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.,* 527 F.2d at 974; *Rio Energy Int'l, Inc. v. Hilton Oil Transport,* 776 F.Supp. at 122; *Sociedad Anonima de Navegacion Petrolera v. CIA. de Petroleos de Chile S.A.,* 634 F.Supp. at 809. To defeat a motion for consolidation, the nonmoving party must show prejudice that "is sufficiently substantial to outweigh the advantages of resolving th[e] dispute in a consolidated proceeding." *Sociedad Anonima de Navegacion Petrolera v. CIA. de Petroleos de Chile S.A.,* 634 F.Supp. at 809 (quoting *Insco Lines, Ltd. v. Cypromar Navigation Co.,* 1975 A.M.C. 2233, 2235 (S.D.N.Y. 1975)). The mere desire to have one's dis-

putes heard separately is not sufficient. *Id.*

■ In the instant matter, consolidation is appropriate. There are common questions of law and fact in the two arbitrations. Clipper Gas seeks to arbitrate the dispute regarding the loading of the vinyl chloride monomer, the condition of the cargo upon loading, and the alleged contamination of the cargo. As the PPG parcel and the Georgia Gulf parcel were commingled, petitioner alleges that any arbitration with Georgia Gulf will involve many of the same facts, the same witnesses, and the same issues as the arbitration involving PPG. This Court agrees that a principal issue of both proceedings is the question of who is responsible for the alleged contamination. Thus, numerous questions of fact and law are identical in both disputes.

Further, as Clipper Gas maintains, consolidation will not only speed the resolution of these claims, but also reduce the possibility of inconsistent awards. Georgia Gulf has asserted a counterclaim against Clipper Gas to recover damages for the contamination of the cargo. Clipper Gas has denied liability and asserts that PPG or Georgia Gulf is at fault. In separate proceedings, the arbitrators in the Clipper Gas–Georgia Gulf arbitration would not be bound by the decision of the arbitrators in the Clipper Gas–PPG arbitration. Thus, without consolidation, PPG may be found liable for the contaminated cargo in the Clipper Gas–Georgia Gulf arbitration, while the Clipper Gas–PPG arbitration finds Georgia Gulf at fault.

In addition, PPG has failed to convince the Court that substantial prejudice would result if the arbitrations were consolidated. PPG argues that a consolidation of proceedings at this stage would require dismantling of the existing panel, and "starting all over." PPG Opp. at 24. Apparently, however, very little has occurred in the Clipper Gas–Georgia Gulf proceeding. *See* Verified Petition of P/R Clipper Gas, dated

---

**3.** Although PPG correctly notes that *Reefer Express Lines Pty., Ltd. v. Mediteranska Plovidba,* 86 Civ. 4490, 1987 WL 11685 (S.D.N.Y. May 28, 1987), is sympathetic to the reasoning in *Ore,* the Court in that case did not resolve the dispute regarding *Nereus's* vitality, but rather, refused to exercise its discretion to consolidate.

March 20, 1992, at ¶ 14. Moreover, any possible prejudice resulting from the dismantling of the panel would be suffered by Clipper Gas and Georgia Gulf, not PPG. Regardless of whether the arbitrations at hand go forward as separate or consolidated proceedings, PPG must, in either event, chose an arbitrator for the panel. On balance, therefore, there seems to be no reason why all the parties should not be present at the same arbitration.

### III

■ PPG also argues that Clipper Gas has either waived its right to demand consolidation or is estopped from making such a demand. This Court finds that PPG's additional arguments opposing consolidation are equally without merit. As stated previously, PPG has failed to demonstrate substantial prejudice, and therefore, cannot justify asserting a claim of estoppel. *See Matsushita Elec. Corp. of America v. Gottlieb*, 90 Civ. 3010, 1991 WL 152615, at *9 (S.D.N.Y. Aug. 1, 1991) ("[t]he party claiming estoppel must not only rely on the words or conduct of the other party, but must also ... suffer prejudice therefrom."). In addition, while this Court does not condone Clipper Gas's two year delay in bringing this motion for consolidation, delay, by itself, is not sufficient to find a waiver or deny the instant motion.[4] *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) (noting the strong federal presumption against waiver of arbitration rights); *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 463 (2d Cir.), *cert. denied*, 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985) (delay in raising arbitration claim not considered a waiver).

---

**4.** Clipper Gas has explained, at least in part, why two years elapsed between the commencement of the Clipper Gas–Georgia Gulf arbitration and the instant motion. *See* Affidavit of William J. Honan III, sworn to April 22, 1992 ("Honan Aff."). Apparently, the charter between Clipper Gas and PPG called for arbitration in New York. Honan Aff. at ¶ 4. A charter addendum, however, provided that disputes were to be resolved by arbitration or litigation in London. *Id.* Until December 1991, counsel

### IV

■ Finally, this Court agrees with PPG's argument that the three-man panel appointed to resolve this dispute is not feasible in a consolidated proceeding. Although the parties are still to select an acceptable panel of arbitrators, this Court believes that a five-man arbitration panel for the three parties involved is appropriate. *See Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d at 975 (ordering five arbitrators in consolidated proceeding); *see also In re Czarnikow–Rionda Co., Inc.*, 512 F.Supp. at 1309–1310 (five-man panel ordered although the arbitral agreement provided for three arbitrators); *Antco Shipping Co., Ltd. v. Sidermar, S.p.A.*, 417 F.Supp. 207, 219 (S.D.N.Y.1976) (same). This Court is convinced that a five member panel will provide each party with its own representative, a provision which appears in the charter agreements, and will prevent any prejudice.

### CONCLUSION

For the reasons stated above, the petition to compel a consolidated arbitration is granted. The parties are directed to select a panel as follows:

(1) Each of the three parties shall appoint an arbitrator within twenty (20) days of the filing of this Court's opinion. If any party shall fail to nominate its arbitrator within that time, the Court will appoint one.

(2) The three arbitrators appointed shall jointly appoint two additional arbitrators. The appointment of the two additional arbitrators must be done by unanimous consent. If such unanimous selection of the two additional arbitrators does not take

---

for Clipper Gas assumed that the London arbitration/litigation provision superseded the New York arbitration provision, thus precluding consolidation with the PPG–Georgia Gulf arbitration taking place in New York. Honan Aff. at ¶ 6. In December 1991, however, Clipper Gas's counsel obtained new evidence indicating that PPG and Clipper Gas had intended that all disputes would be resolved in New York. Honan Aff. at ¶ 5. This action for consolidation was filed shortly thereafter.

place within twenty (20) days after the three original arbitrators are selected, they will be appointed by the Court.

SO ORDERED.